**EXHIBIT 1**

VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**EXHIBIT 1**

DROP-BOX

1  JOSEPH D. PETTA (State Bar No. 286665)
   NARDOS GIRMA (State Bar No. 350123)
2  SHUTE, MIHALY & WEINBERGER LLP
   396 Hayes Street
3  San Francisco, California 94102
   Telephone:    (415) 552-7272
4  Facsimile:    (415) 552-5816
   Petta@smwlaw.com
5  Ngirma@smwlaw.com

6  Attorneys for Dignity Not Detention Coalition

7  CALLARD E. COWDERY (State Bar No. 329697)
   AFRICAN ADVOCACY NETWORK
8  3106 Folsom St
   San Francisco, California 94110
9  Telephone: (415) 889-9573
   ccowdery@aansf.org
10
   Attorneys for John Doe
11

FILED
KERN COUNTY
SUPERIOR COURT

SEP 16 2025

BY _____ DEPUTY

12                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                          **COUNTY OF KERN**

14

15  DIGNITY NOT DETENTION              Case No. BCV-25-103365
    COALITION and JOHN DOE,
16                                     **VERIFIED PETITION FOR WRIT OF**
             Petitioners and Plaintiffs,   **MANDATE AND COMPLAINT FOR**
17                                     **DECLARATORY AND INJUNCTIVE**
         v.                            **RELIEF AND DAMAGES**
18
    CITY OF CALIFORNIA CITY, and       Code of Civil Procedure §§ 1085, 1094.5;
19  CORECIVIC, INC.,                   Civil Code § 1670.9; Bus. & Prof. Code §
                                       17200
20         Respondents and Defendants.
21 _____
                                       **IMMEDIATE RELIEF REQUESTED**
22  CORECIVIC, INC.,
                                       **FILED BY FAX**
23          Real Party in Interest.
    _____
24

25

26

27

28

BY FAX

────────────────────────────────────────────────
VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1

## INTRODUCTION

2      1.      This Verified Petition for Writ of Mandate and Complaint for Injunctive Relief

3   ("Petition") challenges the City of California City's ("City") unlawful approval of the reopening

4   and conversion of the California City Correctional Facility ("Facility") into an immigration

5   detention facility (the "Project"), City's failure to enforce provisions of its Municipal Code, and

6   CoreCivic Inc.'s ("CoreCivic") unlawful operation of the facility without obtaining the proper

7   permits.

8      2.      In approving the Project, the City violated numerous state and local laws,

9   including Civil Code section 1670.9 (also known as Senate Bill ("SB") 29), the City's

10  Municipal Code including but not limited to its Zoning Regulations (California City Municipal

11  Code Title 9, Chapter 2), and the State Planning and Zoning Law (Government Code §§ 65000

12  *et seq*). For example, the City failed to require CoreCivic, the owner and operator of the Facility,

13  to obtain a Conditional Use Permit ("CUP") for the Project as required by section 9-2.402 of the

14  City's Municipal Code, and failed to hold public hearings prior to approving the Project as

15  required by California Civil Code section 1670.9(d).

16     3.      By reopening the Facility as an immigration detention center on or around August

17  27, 2025 and immediately receiving transfers of detained individuals, CoreCivic has violated

18  and remains in violation of provisions in the Municipal Code that required it to receive specific

19  approvals, including a CUP and business license, before reopening the Facility and commencing

20  operations. These violations of the Municipal Code also constitute unlawful conduct under the

21  California Unfair Competition Law (Bus. & Prof. Code §§ 7200 *et seq*).

22     4.      The City's abandonment of its mandatory duties under the Municipal Code does

23  not legitimize CoreCivic's operations. The City's failure to hold required public hearings in

24  particular has allowed the City and CoreCivic to circumvent public participation in local land

25  use decisions. The right to public notice and hearing for land use decisions is a foundational

26  principle in land use and municipal law and the public's right to participate in decisions

27  regarding immigration detention facilities in particular has been codified into state law.

28

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

5.      Equally important is the City's jurisdiction over local land use planning, including its authority to approve, deny, or rescind conditional use and other development permits and licenses. The City has abdicated this authority by tacitly permitting CoreCivic to reopen and begin populating the Facility without a CUP, business license, or other required approvals, even in the face of clear health and safety concerns about the Facility, claiming it is powerless to take actions mandated by its Municipal Code. In doing so, the City has barred the public from its rightful role in local land use decisions in violation of both the Zoning Regulations and multiple state laws.

6.      For all these reasons, the City's approval of the Project must be overturned, the City must be required to comply with and enforce its Zoning Regulations, the City must be enjoined from issuing further approvals for the Project unless it complies with SB 29, and CoreCivic must be enjoined from further operating and further populating the Facility until it receives the proper approvals and the City complies with SB 29.

**PARTIES**

7.      Petitioner/Plaintiff ("Petitioner") Dignity Not Detention Coalition ("Coalition") is a group of nearly twenty community organizations defending immigrants' and detainees' civil rights, protecting the public's right to participate in municipal planning processes affecting those rights, and fighting against the negative impacts of mass immigration detention on society at large and on local communities, including California City. Coalition members include the Immigrant Legal Resources Center ("ILRC"), California Immigrant Youth Justice Alliance ("CIYJA"), Immigrant Defense Project ("IDP"), Inland Coalition for Immigrant Justice ("IC4IJ"), National Immigration Project, Detention Watch Network ("DWN"), Black LGBTQIA+ Migrant Project ("BLMP"), Pangea Legal Services, Interfaith Movement for Human Integrity ("IM4HI"), Freedom for Immigrants ("FFI"), Services, Immigrant Rights and Education Network ("SIREN"), American Civil Liberties Union of Southern California ("ACLU SoCal"), American Friends Service Committee – San Diego U.S. Mexican Border Program ("AFSC USMBP"), ORALE (Organizing in Recognition of Advanced Leadership and Equity)

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1  (formerly Long Beach Immigrant Rights Coalition), Orange County Rapid Response Network

2  ("OCRRN"), and San Diego Free Them All Coalition.

3      8.      The Coalition engages in a variety of activities, including providing resources and

4  support to communities and organizations working on immigration enforcement issues,

5  supporting formerly-incarcerated community members in leadership development, educating

6  elected officials and the public on detention conditions and detention-related state laws, and

7  engaging elected officials to take steps to protect immigrant community members. The

8  conversion and population of the Facility would frustrate the Coalition's mission and goals by

9  undermining the protections of SB 29, a state law the Coalition passed, thereby setting a

10  precedent that other cities or corporations could ignore the law as well, and diverting the

11  Coalition's resources by requiring the Coalition to monitor yet another detention site and

12  mobilize additional efforts to compel compliance with the law. The Coalition has also suffered

13  monetary harm by expending resources to investigate the City's and CoreCivic's unlawful

14  conduct and advocate for its clients and members who are being, and would continue to be

15  harmed by City's and CoreCivic's actions. Furthermore, the Coalition has identified at least one

16  of its individual member organizations which has a client currently detained at the Facility who

17  is currently experiencing harm and would suffer further, imminent harm from the continued

18  operation of the Facility.

19      9.      Petitioner John Doe[1] was transferred to the Facility on or around September 1,

20  2025, and is currently an occupant of the Facility. Because CoreCivic is not properly authorized

21  to operate the Facility, and the City and CoreCivic have failed to comply with the City's

22  Municipal Code and SB 29 in allowing the Facility to operate and receive detainees, John Doe's

23

24

25  [1] Petitioner John Doe is filing under a conditional pseudonym and will file a request to proceed
under pseudonym. *Dep't of Fair Emp. & Hous. v. Superior Ct. of Santa Clara Cnty.* (2022) 82

26  Cal.App.5th 105, 112 ("Procedurally, because a hearing is required, a party who wants to
proceed anonymously will file the initial complaint or petition *conditionally* under a pseudonym

27  and then move for an order granting permission to proceed that way. If the request is granted,
the initial pleading can remain. If pseudonym use is denied, the pleading must be amended to

28  state the party's true name.").

4

1 | detention at the Facility is unlawful under state and local laws, and places him at risk of
2 | imminent harm from substandard and inhuman conditions at the Facility.

3 |     10.    Petitioner John Doe is an occupant of real property being affected by CoreCivic's
4 | violation of the City's Zoning Regulations. California City Municipal Code § 9-2.2804(a).

5 |     11.    Respondent/Defendant City of California City is, and at all times herein mentioned
6 | was, a political subdivision of the State of California responsible for regulating and controlling
7 | land use within the City, including but not limited to implementing and complying with the
8 | provisions of the State Planning and Zoning Law, the City's Municipal Code, including its
9 | Zoning Regulations, and SB 29.

10 |     12.    Respondent/Defendant and Real Party in Interest CoreCivic, Inc. is a for-profit
11 | corporation formed in Maryland and based in Tennessee. CoreCivic currently owns and operates
12 | the Facility in California.

13 | **JURISDICTION AND VENUE**

14 |     13.    This court has jurisdiction over the matters alleged in this Petition pursuant to
15 | California Code of Civil Procedure sections 1085 and 1094.5.

16 |     14.    Venue is proper in this Court because the causes of action alleged in this petition
17 | arose in Kern County.

18 |     15.    Petitioners have no plain, speedy, or adequate remedy in the course of ordinary
19 | law unless this Court grants the requested writ of mandate to require the City to set aside any
20 | approval of the Project and comply with and enforce its Municipal Code, and enjoins CoreCivic
21 | from proceeding further with the Project until it has received the proper permits and approvals,
22 | and complied with state law. In the absence of such remedies, the Facility will continue to
23 | operate and populate in violation of state law.

24 |     16.    This Petition is timely filed.

25 | **STATEMENT OF FACTS**

26 |     17.    On information and belief, Petitioners plead the following facts.

27 |
28 |

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

18.     The California City Correctional Facility ("Facility") was built in 1999 and is located at 22844 Virginia Boulevard in California City, California, a community located at the western edge of the Mojave Desert.

19.     On January 20, 1998, the City Council of California City adopted Resolution No. 01-98-1802, granting Conditional Use Permit ("CUP") 97-07 to Corrections Corporation of America (the name under which CoreCivic previously operated) to establish and operate a 2,304 bed prison facility on approximately 70 acres. According to the CUP, "prison facilit[ies]" were permitted as conditional uses on the land, which was zoned for Residential/Agricultural use at the time.

20.     An environmental impact report was also prepared for the project and the City Council certified a Final EIR Supplement (State Clearinghouse ("SCH") No. 97091045)[2] for the proposed project as part of the CUP's approval. Petitioners have submitted requests to the City and CoreCivic for a copy of this EIR pursuant to the California Public Records Act ("CPRA") Government Code sections 7920.000 *et. seq.*, and Civil Code section 1670.9(c), but have not, at the time of this filing, received the requested documents.

21.     Since the Facility's construction, it has been used to incarcerate both state and federal prisoners. The Facility briefly housed a small number of U.S. Immigration and Customs Enforcement ("ICE") detainees over a decade ago, the only aberration, as far as Petitioners are aware, from the Facility's primary use as a prison for criminal detainees. Most recently, between 2013 and 2024, the Facility was used to detain prisoners held by the California Department of Corrections and Rehabilitations ("CDCR").

22.     In 2017, the California State Legislature passed SB 29, which prohibited cities, counties, and local law enforcement agencies from entering into any new contracts, on or after January 1, 2018, with private prison companies for civil immigration detention or modifying existing contracts for the purposes of increasing a detention facility's capacity. The bill also

---

[2] The CUP identifies the SCH number for the EIR as #97091045, but records on the SCH's website identify environmental documents for a 2304-bed prison under the SCH number #1997091045. These two SCHs appear to identify the same EIR.

6

1   increased public oversight of local approvals concerning such facilities by requiring a city,
2   county, or other public agency issuing a permit or approving a deed, instrument, or other
3   document, for the construction or reuse of a building by a private prison company to: (1) provide
4   notice to the public at least 180 days before execution of the conveyance or permit and (2)
5   solicit and hear public comments on the action in at least two separate public meetings. SB 29
6   was codified in Civil Code section 1670.9 and went into effect on January 1, 2018.

7       23.    In May 2021, California City released a Draft EIR (SCH No. 2017121069) to
8   evaluate the potential environmental impacts associated with a proposed expansion of the
9   Facility, which would have added two new correctional facilities, each with up to 1,512 beds, on
10   undeveloped land east of the existing Facility. The Draft EIR for the proposed expansion noted
11   that the project would require another CUP. An agenda for a Planning Commission meeting held
12   on March 16, 2021 listed a pending CUP for a correctional facility that was awaiting completion
13   of a final environmental document. No new facilities were ever built.

14       24.    The Facility shut down in March 2024 after CDCR declined to renew its annual
15   lease agreement with CoreCivic. Petitioners understand that the Facility had been dormant and
16   unoccupied for over a year before CoreCivic's unlawful repopulation of the Facility on or
17   around August 27, 2025.

18       25.    CoreCivic signed a letter contract with ICE, effective April 1, 2025, for use of the
19   Facility.

20       26.    CoreCivic has not applied for, nor has the City required, a CUP to reopen and
21   convert the Facility into an immigration processing center. A Site Plan Review ("SPR") Minor
22   Application for an "Immigration Processing Center" was listed as an "Active Planning Project[]
23   under Review" on the Planning Commission's August 5, 2025 agenda, with a description for the
24   agenda item stating that a "[b]usiness license will be considered for approval once Fire &
25   Building Dept. requirements and inspections are met." City officials have not, according to
26   public records, required any other permits or approvals for the Project.

27       27.    CoreCivic claims to have applied for, and the City had pending a, a business
28   license to operate an "Immigration Processing Center" at the existing prison Facility.

7

28.     On July 29, 2025, the City Manager sent CoreCivic a letter regarding an inspection of the Facility undertaken by the California City Fire Department on July 22, 2025. According to the letter, the Facility did not, on the date of the inspection, comply with the fire code and would "pose a serious and imminent threat to the health and safety of the community of California City, City's emergency personnel, future detainees, those employed at the facility and visitors." The letter stated that the Facility could not legally operate until it addressed code violations and determined that it would not be possible to address those violations within 120 days.

29.     As of the date of this filing, City officials have not publicly explained to residents how CoreCivic has remedied the violations determined in the July 22 inspection.

30.     Despite the absence of official approvals, CoreCivic took several steps to begin opening the Facility. In June of 2025, newspapers began to report on CoreCivic's efforts to open the Facility, including the installation of a new sign identifying the Facility as "California City Immigration Processing Center," posting of job listings, and CoreCivic's undertaking of purported "preliminary activation activities." Based on public records and evidence, no official permit, license, or contract had been approved for the Facility at this point.

31.     Alarmed by these developments, Coalition member ILRC sent two comment letters, on June 24 and August 4, 2025, to the City Council and other City officials raising concerns about the City's compliance with SB 29 (Cal. Civil Code § 1670.9), and other state laws, including the California Environmental Quality Act ("CEQA"). A third letter sent by the Coalition's counsel on August 29, 2025 reiterated ILRC's concerns and noted that the Facility could not proceed without discretionary approvals including a CUP. The City and CoreCivic have not responded to these letters or addressed the concerns raised by Petitioners.

32.     Immigration detention is typically shorter term than incarceration, with detained individuals regularly transferred between facilities. For example, according to one report, 60 percent of detained immigrants are transferred at least once. In addition, people in immigration detention are often transferred to their court hearings on a daily basis or released on parole, bond, or when they win their cases. Additionally, asylum seekers and other immigrants recently

8

1   detained are brought into immigration detention facilities often daily. This substantial increase
2   in ingress and egress, combined with the further increase in visits from family and the
3   community to detention facilities, as well as any construction or improvements needed to make
4   the facilities comply with federal standards for housing ICE detainees, result in increased
5   vehicle miles traveled ("VMT"), traffic, noise, air pollution, greenhouse gas emissions, and
6   other impacts that fall not only upon detainees, their families, and employees, but on local
7   residents as well. By opening this Facility as a detention center without the proper public
8   process, or any environmental review, California City residents will suffer health impacts and
9   will be deprived of their right to understand the Project's potentially significant environmental
10  effects.

11      33.     Beginning on or around August 27, 2025, Petitioner Coalition began receiving
12  credible information from several individuals in contact with immigration detainees currently
13  held at the California City Facility that CoreCivic had begun populating, and is continuing to
14  populate, the Facility. The Facility is also now listed on the ICE website. Multiple news articles
15  published on and since September 2, 2025 corroborate these reports that the Facility is
16  operational and has begun receiving detainees, with several articles citing allegations that
17  CoreCivic lacks the proper approvals to operate the Facility.

18      34.     Petitioner John Doe was transferred to the Facility on or around September 1,
19  2025. Upon arrival, he was immediately locked in a cell and left there for eighteen hours. He
20  and others brought to the Facility have been subjected to physically invasive, prison-style
21  searches. Petitioner John Doe and others at the Facility are locked into small cells, which they
22  have to share with another person, for much of the day. There is not enough seating for everyone
23  to eat in their communal dining area, and the only toilets available are located inside the cells
24  within plain view. Showers are in an open area such that no person can bathe without being
25  observed by other detainees.

26      35.     City officials have not explained how the Facility was able to open without either
27  a CUP or business license, and without the 180-day notice required under Civil Code section
28  1670.9(d).

9

36.    The proposed business license was last listed as "under review" according to the agenda for the Planning Commission's August 5, 2025 regular meeting. At the Commission's September 2, 2025 meeting, City officials noted that CoreCivic had submitted a new business plan, operational statement, and SPR statement. At the same meeting, the City Attorney confirmed that there have been no public hearings on the Project.

37.    City officials have publicly characterized themselves as powerless to prevent the Facility from reopening or converting into an immigration detention facility. In late June, news reports describe Mayor Marquette E. Hawkins as expecting the prison to reopen as an immigration processing center. In additional statements to media over the course of the following month, the Mayor claimed that the City lacked jurisdiction over CoreCivic's use of its property and described the City as powerless to stop CoreCivic from reopening and converting the Facility. When the Facility did open, Mayor Hawkins stated that he couldn't "confirm or deny" the Facility was operating – with or without permits.

38.    At the same time, CoreCivic representatives have described the company's leadership team as having an "open line of communication" with City officials and CoreCivic hosted the Mayor and two other councilmembers for a tour of the Facility in June.

## FIRST CAUSE OF ACTION

### Unlawful Approval of the Project in Violation of the City's Municipal Code and State Planning and Zoning Law
### California City Municipal Code § 9-2.2803(a); Code of Civil Procedure § 1085; Gov. Code § 65905

39.    Petitioners reallege and incorporate by reference the preceding paragraphs in their entirety.

40.    Under Code of Civil Procedure section 1085, a writ of mandate will lie to compel a public agency to perform a mandatory legal duty, meaning a duty the agency is "required to perform in a prescribed manner under the mandate of legal authority without the exercise of judgment or opinion concerning the propriety of the act." *Los Angeles Cnty. Employees Retirement Assn. v. County of Los Angeles* (2024) 102 Cal.App.5th 1167, 1199. The City has such a clear mandatory duty under its Municipal Code, which is enforceable under section 1085.

10

41.     The California City Municipal Code provides that "[d]epartments, officials, or employees vested with the duty or authority to issue permits or licenses *shall* conform to this chapter and *shall* issue no permit or license for uses, buildings, or purposes in conflict with" the City's Zoning Regulations (emphasis added). California City Municipal Code § 9-2.803(a). "A permit or license issued in conflict with" the Zoning Regulations is considered "null and void." *Id.*

42.     The Municipal Code further sets out procedural and substantive requirements for the issuance of a CUP, including noticed public hearings with opportunity to comment, and the right of appeal to the City Council. California City Municipal Code §§ 9-2.2501, 1-4.02(a).

43.     A city cannot lawfully issue licenses or permits in conflict with zoning, or participate in, waive, or consent to a violation of its zoning laws. *League of Residential Neighborhood Advocates v. City of Los Angeles,* 498 F.3d 1052, 1056 (9th Cir. 2007) ("Any such agreement to circumvent applicable zoning laws is invalid and unenforceable").

44.     The City has failed to perform the mandatory legal duty set out in its Municipal Code, specifically its Zoning Regulations, by enabling, allowing, and facilitating the Facility's reopening and conversion without the necessary permits and approvals. The Facility is currently located on land zoned O/RA (Open Space Residential Agricultural). Under the City Code, only uses explicitly permitted in a given zoning district are allowed, all others are barred. California City Municipal Code § 9-2.102(b). The O/RA zoning district does not include immigration detention or processing centers in its list of principally or conditionally permitted uses. *See* California City Municipal Code §§ 9-2.401, 9-2.402. The City therefore may not allow the use of the Facility to commence without amending the Zoning Code to provide for immigration detention facilities as an allowed use in the O/RA zoning district.

45.     Even if the Facility were considered to be a "[g]overnmental or quasi-governmental correction, probation or prison facility[y] [or] service[]," it would be allowed in the O/RA district only upon City issuance of a CUP for the operation of an immigration detention facility. California City Municipal Code § 9-2.402(p). The City has not issued a CUP

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1   for such a facility. Therefore, even under this interpretation of the City Code, the City may not
2   allow the use of the Facility to commence without issuing a CUP.

3       46.     The previously issued CUP does not cure the Facility's unlawfulness. The
4   previous CUP was approved solely for the "operat[ion] of a *prison facility* . . . for as long as the
5   use is *conducted in accordance* with the [CUP]." (Emphasis added.) A "prison facility" and
6   immigration detention center are two substantially different uses with different impacts on the
7   community and environment. Moreover, no use as a prison facility has been conducted "in
8   accordance with the" CUP for more than a year; therefore by the CUP's own terms, it no longer
9   authorizes *any* use.

10      47.     CoreCivic's intended use of the Facility as a 2,560-bed immigration detention
11  facility also exceeds the prison's prior permitted capacity of 2,304 beds by more than 10
12  percent. CoreCivic must also obtain a new CUP to enable this proposed expansion.

13      48.     The City had two options under its Code: undertake an official action to allow the
14  use of the Facility, or bar that use. Instead City officials tacitly approved the Facility's
15  reopening. CoreCivic has not submitted a CUP application for the Project, and the only
16  entitlement that has been contemplated for the Project is a business license, potentially involving
17  "minor site permit review." The City's Mayor has indicated that he considers the Facility's
18  reopening a done deal, expressing his expectation that the Facility will open based on the false
19  claim that any necessary permits are by-right—i.e., that the City Code allows the use in the
20  O/RA district. Facing concerns from members of the community, the Mayor further
21  characterized the City as powerless to dictate the conduct of a business that has its "ducks in a
22  row."

23      49.     The City's failure to require a CUP allowed it to bypass procedural requirements
24  in the City's Zoning Regulations which require, among other things, public notice and a hearing
25  for such a development approval. California City Municipal Code § 9-2.2501(e). A public
26  hearing is also required for a CUP under State Planning and Zoning Law. Gov. Code § 65905.

27
28

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

50.     The City's attempt to disclaim its mandatory duties does not relieve it of those duties, nor does its approval of the Project through inaction and/or undisclosed and informal agreements validate CoreCivic's impermissible use of the Facility.

51.     By proceeding in this manner, the City has violated its Zoning Regulations and public hearing requirements for a CUP.

## SECOND CAUSE OF ACTION

### Failure to Enforce the City's Zoning Code
### California City Municipal Code § 9-2.2804(c); Code of Civil Procedure § 1085

52.     Petitioners reallege and incorporate by reference the preceding paragraphs in their entirety.

53.     The California City Municipal Code provides that "[d]epartments, officials, and employees vested with the duty or authority to issue permits or licenses *shall* conform" to the City's Zoning Regulations. California City Municipal Code § 9-2.2803(a) (emphasis added). Under the Code, the use of any land or building contrary to the Zoning Regulations is a public nuisance. California City Municipal Code § 9-2.2803(b). Furthermore, "[t]he City *shall* commence actions and proceedings for the abatement, removal, and enjoinment in the manner provided by law and *shall* take such other steps and *shall* apply to any court as may have jurisdiction to grant such relief as will abate or remove such . . . use, and restrain and enjoin any person from maintaining such building or structure or using any property contrary to" the City's Zoning Regulations. California City Municipal Code § 9-2.2804(c) (emphasis added).

54.     Despite its clear mandatory duty to take action against any use of property in conflict with the City's Zoning Regulations, the City has taken no such action nor expressed any intention to take such action. Instead, the City has claimed that it can do nothing to prevent CoreCivic's unlawful use of the Facility for immigrant detention.

55.     The City has a mandatory duty under these provisions of the Municipal Code to take action against unlawful use of the Facility. It is broadly authorized to take action in the

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

manner provided by law, including through litigation enjoining uses contrary to the Zoning Regulations.

56.    By failing to take the actions required under section 9-2.2804, the City has violated its Municipal Code.

### THIRD CAUSE OF ACTION

**Violation of SB 29**
**California Civil Code § 1670.9**

57.    Petitioners reallege and incorporate by reference the preceding paragraphs in their entirety.

58.    California Civil Code section 1670.9(a) prohibits a city from entering "a contract with the federal government or any federal agency or a private corporation to house or detain noncitizens for purposes of civil immigration custody" if it was not party to such a contract as of January 1, 2018. Similarly California Civil Code section 1670.9(b) prohibits a city that had such a contract on January 1, 2018, from "renew[ing] or modify[ing] that contract in a manner that would expand the maximum number of contract beds" for immigration detention purposes. Civ. Code § 1670.9(b).

59.    California Civil Code section 1670.9(d) provides that a city, county, or public agency may not "issue a permit for the building or reuse of existing buildings by any private corporation . . . to house or detain noncitizens for purposes of civil immigration proceedings" unless the agency has satisfied two conditions: (1) provide public notice of the action at least 180 days before the execution of the conveyance or permit, and (2) solicit and hear public comment on the proposed conveyance or permit action in at least two separate meetings open to the public. Civil Code § 1670.9(d)(1), (2).  The California State Legislature enacted this provision to increase public transparency and address the fact that many local decisions concerning detention facilities "are done with little public awareness." (SB 29, Assembly Floor Analysis, September 8, 2017).

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1    60.    City officials have not been forthcoming about the contents of their discussions or

2    negotiations with CoreCivic, but CoreCivic officials have described the company has having an

3    "open line of communication" with the City. A contract or agreement of any nature entered into

4    between the two parties during those communications constitutes a violation of Civil Code

5    section 1670.9. The City cannot enter into any contracts with CoreCivic that would facilitate the

6    conversion of the Facility into an immigration detention center.

7    61.    The City has not met either of the requirements of section 1607.9(d). The City has

8    failed to publicly notice or agendize any proposed approval related to the Project. The City

9    Attorney conceded at the Planning Commission's September 2, 2025 meeting that no public

10    hearing on the Project had been held. The City cannot lawfully issue the required business

11    license, CUP, or any other entitlement unless and until it provides public notice and holds a

12    hearing.

13    62.    Through its tacit approval of and provision of City services to the Facility, the City

14    violated Civil Code section 1670.9(a). Alternatively, if the City had any pre-existing contract

15    with CoreCivic for the civil detention of immigrants prior to 2018, the City violated Civil Code

16    section 1670.9(b).

17    63.    By permitting CoreCivic to operate the Facility without a properly noticed,

18    agendized, and publicly discussed business license or CUP, the City violated Civil Code section

19    1670.9(d).

20    ### FOURTH CAUSE OF ACTION

21
22    **CoreCivic's Illegal Operation of the Facility**
    **California City Municipal Code §§ 9-2.402, 9-2.2804(a), 3-2.3.201**

23
24    64.    Petitioners reallege and incorporate by reference the preceding paragraphs in their
    entirety.

25
26    65.    The City's Municipal Code provides that "[i]t shall be unlawful for a person to

27    commence, maintain, conduct, or carry-on a business within the City without having first

    obtained a [business] license." California City Municipal Code § 3-2.3.201.

28

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

66. As described above, the City's Zoning Regulations bar use of the Facility as an immigration detention center. California City Municipal Code §§ 9-2.402, 9-2.102(b). CoreCivic's population and ongoing use of the Facility for that purpose is therefore unlawful and subject to enforcement. Even if the use of the Facility for immigration detention were allowed as a conditional use, CoreCivic has not obtained a CUP, a business license, or any permit allowing its use of the Facility under the Zoning Code.

67. By committing the acts alleged above, CoreCivic has violated the City's Municipal Code.

68. The Municipal Code prohibits a corporation from "violat[ing] any provision, restriction, or requirement of this Code or any code adopted herein . . . or any condition of any approval, permit, license, or other entitlement issued pursuant hereto." California City Municipal Code § 1-3.01(a)(1).

69. The City's Zoning Regulations "may . . . be enforced by injunction issued by the Superior Court upon the suit of the . . . occupant of real property affected by a violation or prospective violation of [its] provisions." California City Municipal Code § 9-2.2804 (a).

70. Petitioner John Doe is an occupant of real property which is affected by CoreCivic's existing and prospective violations of the City's Zoning Regulations.

## FIFTH CAUSE OF ACTION

### Violation of Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq.

71. Petitioners reallege and incorporate by reference the preceding paragraphs in their entirety.

72. As described above, the City's Municipal Code bars the Facility from reopening and converting into an immigration detention facility. The Municipal Code prohibits a corporation from violating any provision of the Code. California City Municipal Code § 1-3.01(a)(1).

16

1   73.    CoreCivic opened and began populating the facility in violation of the City's

2   Municipal Code. California's Unfair Competition Law prohibits a person, including a

3   corporation, from engaging in any unlawful fraudulent business act or practice. Bus. & Prof.

4   Code § 17200. A business practice or act is unlawful if it is forbidden by law. *Zhang v. Superior*

5   *Court* (2013) 57 Cal.4th 364. Any person who has engaged in such "unfair competition may be

6   enjoined in any court of competent jurisdiction." Bus. & Prof. Code § 17203.

7   74.    CoreCivic's violations of Municipal Code section 9-2.402 and Civil Code section

8   1670.9 constitute unlawful conduct under Business and Professions Code section 17200 et seq.

9   75.    Petitioners have suffered and will continue to suffer injury and harm as a result of

10  CoreCivic's unlawful conduct. Petitioner Coalition has suffered injury in fact and monetary

11  harm because it and its member organizations have dedicated resources to investigating and

12  stopping CoreCivic's conduct that would not have been necessary but for CoreCivic's illegal

13  actions and which could have been used on other matters.

14  76.    CoreCivic's operation of the Facility in violation of the Municipal Code frustrates

15  Petitioner Coalition's mission.

16  77.    This Court has jurisdiction under Business and Professions Code section 17203 to

17  enjoin CoreCivic's unlawful conduct that violates the Municipal Code and Civil Code section

18  1670.9.

19                              **PRAYER FOR RELIEF**

20  Wherefore, Petitioners pray for relief as follows:

21  1.    Alternative and peremptory writs of mandate directing the City to vacate and set

22  aside any approval of the Project.

23  2.    Alternative and peremptory writs of mandate directing the City to comply with SB

24  29 and the City's Municipal Code.

25  3.    For a temporary stay, temporary restraining order, and preliminary and permanent

26  injunctions restraining the City and CoreCivic, and all others acting in concert with the City or

27  CoreCivic on their behalf, from taking any actions to implement the Project, unless and until the

28

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1  City and CoreCivic fully comply with SB 29 and the requirements of the City's Municipal

2  Code.

3      4.    A Court order pursuant to Business and Professions Code section 17203 enjoining

4  CoreCivic from violating the City's Municipal Code and California Civil Code section 1670.9.

5      5.    A declaration that the City violated its duties under SB 29 and its Municipal Code.

6      6.    Costs of the suit.

7      7.    An order awarding Petitioners its attorneys' fees as authorized by Code of Civil

8  Procedure Section 1021.5 and/or other provisions of law; and

9      8.    Such other and further relief as the court deems just and proper.

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

1 | DATED: September 15, 2025          SHUTE, MIHALY & WEINBERGER LLP

2

3

4                                                 By: _____

5                                                      JOSEPH D. PETTA

6                                                 Attorneys for Dignity Not Detention Coalition

7 | DATED: September 15, 2025          AFRICAN ADVOCACY NETWORK

8

9

10                                               By: _____

11                                                    CALLARD E. COWDERY

12                                               Attorneys for John Doe

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No.

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Jehan Laner, am the representative of Dignity Not Detention Coalition, a party to this action. I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF and know its contents. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 15, 2025, at San Francisco, California.

Jehan Laner
Name of Signatory                        Signature

VERIFIED PETITION FOR WRIT OF MANDATE & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
Case No.

# EXHIBIT A

**TEACHING, INTERPRETING,**
**& CHANGING LAW** SINCE **1979**

**EXECUTIVE DIRECTOR**
Eric Cohen

San Francisco

Washington, D.C.

San Antonio

Houston

ilrc@ilrc.org
www.ilrc.org

    

June 24, 2025

*Via Electronic Mail and FedEx*

Marquette E. Hawkins
Mayor, California City
City Hall
21000 Hacienda Blvd.
California City, CA
93505

### Re: Conversion of the California City Correctional Center

Dear Mayor Hawkins:

These comments are submitted on behalf of the Immigrant Legal Resource Center ("ILRC") regarding the conversion of the California City Correctional Center located at 22844 Virginia Boulevard, California City, CA 93505, for use to detain immigrant detainees (the "Project"). As an organizational co-sponsors of SB 29, codified at Cal. Civil Code § 1670.9(d), we are concerned with the compliance of Cal. Civil Code § 1670.9(d) and other California state laws such as the California Environmental Quality Act ("CEQA").

If the City moves to approve the conversion of this facility or otherwise approves or supports any actions to use this facility as an immigration detention center without following applicable state laws, the city could be liable for any violations of state law, including under a writ of administrative mandamus under Cal. Civ. Proc. Code § 1094.5 or § 1085.[1]

### I.    Background on the Immigrant Legal Resource Center

The Immigrant Legal Resource Center (ILRC) is a national expert in immigration law and policy, and has staff dedicated exclusively to supporting the Central Valley. At the local level, the ILRC provides resources and support to communities and organizations working on immigration enforcement issues of which immigration detention is a tremendous component.

---

[1] *Bixby v. Pierno*, 4 Cal. 3d 130 (1971); *Citizens for Amending Proposition L v. City of Pomona*, 239 Cal. Rptr. 3d 750 (2018) (The city violated its duty to comply with the ballot initiative by entering into a contract that directly violated its terms).

The ILRC has a public and beneficial interest in this matter. The ILRC works on immigration detention-related matters across the state of California, including in the Central Valley. If this Project moves forward, we would have to divert considerable resources to providing support to the Central Valley region. Because there is a direct relationship between detention capacity and ICE arrest,[2] this is an issue of regional and state concern. In addition, as we co-sponsored Cal. Civil Code 1670.9(d), we are uniquely committed to ensuring that agencies comply with the law.

## I.    Compliance with Cal. Civil Code § 1670.9(d)

California City is bound by all applicable California state laws including Cal. Civil Code § 1670.9(d) which states that a city, county, or public agency may not "approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit for the building or reuse of existing buildings by any private corporation…" unless the entity has satisfied two conditions.

The first condition requires public notice of the action at least 180 days before the execution of the conveyance or permit. The second condition, which must also be fulfilled, requires that public comment be solicited and heard on the proposed conveyance or permit action in at least two separate meetings which are open to the public. Cal. Civil Code § 1670.9(d)(1),(2).

It appears based on publicly available information posted to your City's Granicus website that as of December 2022, CoreCivic's Conditional Use Permit Application (20-02) remained pending and unresolved. This was apparently due to a lack of response from CoreCivic to the City Planning Department's effort to conduct a Site Plan Review (SPR 20-14).

Based on your public statements and other reporting, it appears as though you recently visited the prison and spoke with CoreCivic officials about their plans to reopen it as an ICE processing facility. While ICE and CoreCivic have reportedly signed a letter agreement allowing the company to prepare the facility to accept detained immigrants, California City has failed to publicly notice or agendize any action the City may take to permit, levy special taxes, or collect a bed tax based on this ICE-CoreCivic agreement. You have presented this initiative as though it is a done deal, and ICE has reportedly provided up to $10 million to CoreCivic between April and September. However, in the absence of a properly noticed, agendized, and publicly discussed conditional use permit for the site, it cannot open in compliance with California law.

---

[2] ILRC, *If You Build it ICE Will Fill It*, (2022)
https://www.ilrc.org/sites/default/files/resources/if_they_build_it_ice_will_fill_it_report_2022.pdf (finding that where a detention center has at least 850 beds, it is 6.5 times more likely that undocumented residents nearby will be detained. Here, in California City, we are more likely to see an even greater risk of detention because the center has the capacity for 2,300 beds).

Any attempt by the City to assist CoreCivic and ICE in circumventing the plain language of California's obligations for permitting this facility will expose the City to legal liability and will be met with steadfast insistence that you uphold the law.

We request an explanation of any steps taken by California City to comply with Cal. Civil Code § 1670.9(d).

## II.    Compliance with the California Environmental Quality Act ("CEQA")

California law provides that the object of a contract or permit must be lawful and not contrary to public policy. (*Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 641-642, citing Civ. Code, §§ 1607, 1608, 1667, 1596.) Courts will void any contract or permit that is contrary to public policy or otherwise illegal. (*Id.* at 642.) In enacting the California Environmental Quality Act ("CEQA"), the legislature set forth a policy that public agencies shall regulate activities "so that major consideration is given to preventing environmental damage..." (Cal. Pub. Res. Code § 21000.) Towards this end, CEQA sets forth a policy of ensuring public participation in the environmental planning process. (*See Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist.*

*Agricultural Assn.* (1986) 42 Cal. 3d 929, 949 ("CEQA compels an interactive process of assessment of environmental impacts and responsive project modification which must be genuine. It must be open to the public, premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently described project, with flexibility to respond to unforeseen insights that emerge from the process.").) Furthermore, CEQA (Pub. Res. Code

§21000 *et seq.*) and the State Planning and Zoning Law (Government Code § 65300 *et seq.*) both provide for judicial review of agency actions through Code of Civil Procedure sections 1094.5 and/or 1085.

This Project is subject to CEQA because it has the potential to cause environmental impacts. The City must prepare an Environmental Impact Report (EIR) or at minimum a mitigated negative declaration. CEQA requires that a project be analyzed based on existing physical conditions on the ground, not speculative or hypothetical conditions. Therefore, it is irrelevant whether the space is currently permitted for some other use. Immigration detention facilities, as opposed to other state or federal prison uses, are more temporary. As immigration detention is a federal, civil process, federal agencies such as U.S. Immigration & Customs Enforcement ("ICE") transfer people to other immigration detention facilities regularly. For example, according to one report, 60 percent of detained immigrants are transferred at least once.[3] In addition, people in immigration detention are often transferred

---

[3] AIC, The Landscape of Immigration Detention in the United States, (Dec 2018), https://www.americanimmigrationcouncil.org/research/landscape-immigration-detention-united-states

to their court hearings on a daily basis or released on parole, bond, or when they win their cases. Additionally, asylum seekers and other immigrants recently detained are brought into the facility often daily. This reality, combined with the increase in visits from family and the community to the facilities as well as any construction or improvements needed to make the facilities comply with federal standards for housing ICE detainees will result in increased traffic, traffic noise, and air pollution. By opening this facility as a detention center without complying with CEQA, the City is risking the public's health. The Central Valley suffers from one of the highest air pollution burdens in the country. This Project will only exacerbate it.

Given the possibility that appropriate legal action may be taken to ensure enforcement of Cal. Civil Code Section 1670.9(d) or other state laws, we would like to remind the City of its duty to maintain and preserve all documents and communications that may constitute part of the "administrative record." As you may know, the administrative record encompasses any and all documents and communications which relate to any and all actions taken by the City with respect to the Project. The administrative record further contains all correspondence, emails, and text messages sent to or received by the City's representatives or employees, which relate to the Project, including any correspondence, emails, and text messages sent between the City's representatives or employees and CoreCivic's representatives or employees. Maintenance and preservation of the administrative record requires that, *inter alia*, the City (1) suspend all data destruction policies; and (2) preserve all relevant hardware unless an exact replica of each file is made.

Thank you for the opportunity to submit comments on the Project. We look forward to working to ensure that the City upholds its duty to the public under California law. We request an explanation of any steps taken by California City to comply with Cal. Civil Code § 1670.9(d) no later than Tuesday, July 8, 2025, Attn: Grisel Ruiz (gruiz@ilrc.org). Thank you for your time.

Best,

Grisel Ruiz
Senior Managing Attorney
Immigrant Legal Resource Center

Cc: Councilmembers Jesse B. Hightower, Ronald Smith, Michael Kulikoff, and Michael Hurles
Cc: City Attorney Victor Ponto

# EXHIBIT B

**TEACHING, INTERPRETING,**
**& CHANGING LAW** SINCE **1979**

**EXECUTIVE DIRECTOR**
Eric Cohen

San Francisco

Washington, D.C.

San Antonio

Houston

ilrc@ilrc.org
www.ilrc.org

   

August 4, 2025

*Via Electronic Mail*

Mr. Marquette E. Hawkins
Mayor, California City
City Hall
21000 Hacienda Blvd.
California City, CA 93505

**Re: Applicability of State Laws in Conversion of the California City Correctional Center**

Dear Mayor Hawkins:

These comments are submitted on behalf of the Immigrant Legal Resource Center ("ILRC") regarding the conversion of the California City Correctional Center located at 22844 Virginia Boulevard, California City, CA 93505, for use to detain immigrant detainees (the "Project"). As an organizational co-sponsors of SB 29, codified at Cal. Civil Code § 1670.9(d), we are concerned with the compliance of Cal. Civil Code § 1670.9(d) and other California state laws such as the California Environmental Quality Act ("CEQA").

If the City moves to approve the conversion of this facility or otherwise approves or supports any actions to use this facility as an immigration detention center without following applicable state laws, the city could be liable for any violations of state law, including under a writ of administrative mandamus under Cal. Civ. Proc. Code § 1094.5 or § 1085.[1]

I.      **Background on the Immigrant Legal Resource Center**

The Immigrant Legal Resource Center (ILRC) is a national expert in immigration law and policy, and has staff dedicated exclusively to supporting the Central Valley. At the local level, the ILRC provides resources and support to communities and organizations working on immigration enforcement issues of which immigration detention is a tremendous component.

---

[1] *Bixby v. Pierno*, 4 Cal. 3d 130 (1971); *Citizens for Amending Proposition L v. City of Pomona*, 239 Cal. Rptr. 3d 750 (2018) (The city violated its duty to comply with the ballot initiative by entering into a contract that directly violated its terms).

The ILRC has a public and beneficial interest in this matter. The ILRC works on immigration detention-related matters across the state of California, including in the Central Valley. If this Project moves forward, we would have to divert considerable resources to providing support to the Central Valley region. Because there is a direct relationship between detention capacity and ICE arrest,[2] this is an issue of regional and state concern. In addition, as we co-sponsored Cal. Civil Code 1670.9(d), we are uniquely committed to ensuring that agencies comply with the law.

## I.    California City is bound by Cal. Civil Code § 1670.9(d)

California City is bound by all applicable California state laws including Cal. Civil Code § 1670.9(d) which states that a city, county, or public agency may not **"approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit** for the building or reuse of existing buildings by any private corporation…**to house noncitizens for purposes of civil immigration proceedings"** (emphasis added) unless the entity has satisfied two conditions.

The first condition requires public notice of the action at least 180 days before the execution of the conveyance or permit. The second condition, which must also be fulfilled, requires that public comment be solicited and heard on the proposed conveyance or permit action in at least two separate meetings which are open to the public. Cal. Civil Code § 1670.9(d)(1),(2).

The city is bound by this process when considering the conversion of the California City Correction Center to an immigration detention center. California city is bound through multiple provisions of the statute.

To start, these conditions apply to the Planning Commission's consideration of the business license submitted by CoreCivic to run an Immigration Processing Center. Approval of a business license is covered by this statute as the city is considering the approval an "instrument" to house noncitizens for immigration proceedings. A business license is a type of instrument. "Instrument" is used interchangeably with "business license" in various California state licensing codes. *See e.g.,* Cal. Bus. & Prof. Code § 16000.2 (West), Cal. Bus. & Prof. Code § 16000.3(a) (West) ("When applying to a city for an initial business license, equivalent instrument, or permit…").

---

[2] ILRC, *If You Build it ICE Will Fill It,* (2022)
https://www.ilrc.org/sites/default/files/resources/if_they_build_it_ice_will_fill_it_report_2022.pdf (finding that where a detention center has at least 850 beds, it is 6.5 times more likely that undocumented residents nearby will be detained. Here, in California City, we are more likely to see an even greater risk of detention because the center has the capacity for 2,300 beds).

Furthermore, approval of a business license is covered by this statute because a business license is a type of permit. The statute applies to the issuance of permits and a business license is a type of regulatory permit to conduct business in a city as it grants official permission to operate and is issued pursuant to the city's authority to regulate land use and commercial activity. Therefore, before the city may approve CoreCivic's business license to operate an Immigration Processing Center, it must satisfy both conditions under Cal. Civil Code § 1670.9(d): providing 180 days' public notice and holding at least two public meetings to solicit comment.

Finally, in addition to approval of the business license, California City will also need to approve additional permits, such as the modification of conditional use permits, to allow the California City Correctional Center to operate as an immigration detention center. When the City considers these permits, the City will also be bound by the process laid out in the statute.

Currently, approval of the business license is agendized for the August 5, 2025 Planning Commission Meeting, referred to in the Department Report as Project Number SPR 25-09. To our knowledge, this is the first public meeting to consider "approval" of an "instrument" or "permit" subject to Cal. Civil Code § 1670.9(d). Per the statute, prior to approving the business license, California City *must* hold two separate meetings during which public comment must be solicited and heard. Furthermore, there must be at least 180 days public notice before the execution of the business license. These procedures must also be followed when approving the requisite operating permits. Taken together, these provisions ensure that there is public transparency and public input when considering the approval of a project which undoubtedly will impact California City for decades.

Any attempt by the City to assist CoreCivic in circumventing the plain language of California's obligations could expose the City to a violating of state law. We kindly request confirmation that the City will comply with this state law, and an explanation of any steps taken.

**II.    Saying no to immigration detention, means saying yes to millions in HEAL (Healthy Economies Adapting to Last) funding for California City**

If the City declines to approve the operation of the immigration detention center, the City will receive fast track access to up to five million in California Workforce Development funds, through HEAL.[3] California created Healthy Economies Adapting to Last (HEAL), the first program of its type in the nation aimed at responding to job transitions and the maintenance of local economies when a local government declines to facilitate an immigration detention center. HEAL funds are administered through the California Workforce Development Board (CWDB) and may be used for such projects as the High Roads Training Partnership program, which offers job training in sustainable industries. The CWDB oversees workforce development

---

[3] HEAL Act available at, https://www.ilrc.org/sites/default/files/2023-09/California%20State%20Budget.pdf (HEAL was later amended to extend through 2030)

throughout California. Tasked with creating a strategic workforce plan for the state, the CWDB carries out three distinctive policy goals for California: fostering demand-driven skills attainment; enabling upward mobility for all Californians; and aligning, coordinating, and integrating programs and services. If California City declines to approve the operation of the California City Correctional Center as an immigration detention center, workers and the local economy will be supported by this broad array of state funding and CWDB support.

### III.    California City must comply with the California Environmental Quality Act ("CEQA")

Additionally, we re-submit our comments about the need to comply with CEQA, first submitted for your review on June 24, 2025.

California law provides that the object of a contract or permit must be lawful and not contrary to public policy. (*Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 641-642, citing Civ. Code, §§ 1607, 1608, 1667, 1596.) Courts will void any contract or permit that is contrary to public policy or otherwise illegal. (*Id.* at 642.) In enacting the California Environmental Quality Act ("CEQA"), the legislature set forth a policy that public agencies shall regulate activities "so that major consideration is given to preventing environmental damage..." (Cal. Pub. Res. Code § 21000.) Towards this end, CEQA sets forth a policy of ensuring public participation in the environmental planning process. (*See Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.* (1986) 42 Cal. 3d 929, 949 ("CEQA compels an interactive process of assessment of environmental impacts and responsive project modification which must be genuine. It must be open to the public, premised upon a full and meaningful disclosure of the scope, purposes, and effect of a consistently described project, with flexibility to respond to unforeseen insights that emerge from the process.").) Furthermore, CEQA (Pub. Res. Code §21000 *et seq.*) and the State Planning and Zoning Law (Government Code § 65300 *et seq.*) both provide for judicial review of agency actions through Code of Civil Procedure sections 1094.5 and/or 1085.

This Project is subject to CEQA because it has the potential to cause environmental impacts. The City must prepare an Environmental Impact Report (EIR) or at minimum a mitigated negative declaration. CEQA requires that a project be analyzed based on existing physical conditions on the ground, not speculative or hypothetical conditions. Therefore, it is irrelevant whether the space is currently permitted for some other use. Immigration detention facilities, as opposed to other state or federal prison uses, are more temporary. As immigration detention is a federal, civil process, federal agencies such as U.S. Immigration & Customs Enforcement ("ICE") transfer people to other immigration detention facilities regularly. For example, according to one

report, 60 percent of detained immigrants are transferred at least once.[4] In addition, people in immigration detention are often transferred to their court hearings on a daily basis or released on parole, bond, or when they win their cases. Additionally, asylum seekers and other immigrants recently detained are brought into the facility often daily. This reality, combined with the increase in visits from family and the community to the facilities as well as any construction or improvements needed to make the facilities comply with federal standards for housing ICE detainees will result in increased traffic, traffic noise, and air pollution. By opening this facility as a detention center without complying with CEQA, the City is risking the public's health. The Central Valley suffers from one of the highest air pollution burdens in the country. This Project will only exacerbate it.

Given the possibility that appropriate legal action may be taken to ensure enforcement of Cal. Civil Code Section 1670.9(d) or other state laws, we would like to remind the City of its duty to maintain and preserve all documents and communications that may constitute part of the "administrative record." As you may know, the administrative record encompasses any and all documents and communications which relate to any and all actions taken by the City with respect to the Project. The administrative record further contains all correspondence, emails, and text messages sent to or received by the City's representatives or employees, which relate to the Project, including any correspondence, emails, and text messages sent between the City's representatives or employees and CoreCivic's representatives or employees. Maintenance and preservation of the administrative record requires that, *inter alia*, the City (1) suspend all data destruction policies; and (2) preserve all relevant hardware unless an exact replica of each file is made.

Thank you for the opportunity to submit a written comment on the Project. We look forward to working to ensure that the City upholds its duty to the public under California law. We request an explanation of any steps taken by California City to comply with Cal. Civil Code § 1670.9(d) no later than Tuesday, August 19, 2025, Attn: Jehan Laner (jlaner@ilrc.org). Thank you for your time.

Best,

Jehan Laner
Senior Staff Attorney

---

[4] AIC, The Landscape of Immigration Detention in the United States, (Dec 2018), https://www.americanimmigrationcouncil.org/research/landscape-immigration-detention-united-states

Immigrant Legal Resource Center

Cc: Councilmembers Jesse B. Hightower, Ronald Smith, Michael Kulikoff, and Michael Hurles; Planning Commissioners David Brottlund, Ralph Cantrell, Della Clark, Salena Coleman, and Gesele Marsh via Granicus eComment; and City Attorney Victor Ponto

# EXHIBIT C



# SHUTE, MIHALY
## *☞* WEINBERGER LLP

396 HAYES STREET, SAN FRANCISCO, CA 94102   |   JOSEPH D. PETTA
T: (415) 552-7272   F: (415) 552-5816         |   **Attorney**
www.smwlaw.com                                |   Petta@smwlaw.com

August 29, 2025

*__Via Electronic Mail__*

Mr. Marquette E. Hawkins              Christopher Lopez
Mayor, California City                City Manager, California City
City Hall                             City Hall
21000 Hacienda Blvd.                  21000 Hacienda Blvd.
California City, CA 93505             California City, CA 93505
Email: mhawkins@californiacity-ca.gov Email:clopez@californiacity-ca.gov

Re:   Conversion of California City Correctional Center

Dear Mayor Hawkins, City Manager Lopez, and Members of the City Council and
Planning Commission:

These comments are submitted on behalf of the Dignity Not Detention Coalition
("Coalition") regarding the proposed conversion of the California City Correctional
Center, located at 22844 Virginia Boulevard, California, City, CA 93505, into a detention
center for immigrant detainees (the "Project"). The Coalition is a group of nearly twenty
community organizations defending immigrants' and detainees' civil rights, and the
public's right to participate in municipal planning processes affecting those rights.
Coalition members include the Immigrant Legal Resources Center (ILRC), American
Civil Liberties Union of Southern California (ACLU SoCal), and American Friends
Service Committee – San Diego U.S. Mexican Border Program (AFSC USMBP). These
comments follow letters sent by ILRC on June 24, 2025 and August 4, 2025 regarding
the Project. Based on additional information gathered since that correspondence, the
Coalition remains concerned that the process the City has proposed for considering the
Project violates the City's zoning ordinance, as well as state laws including Senate Bill
("SB") 29 (codified at Cal. Civil Code § 1670.9(d)), and the California Environmental
Quality Act ("CEQA").

If the City moves to approve the Project or otherwise approves or supports any
actions to use this facility as an immigration detention center without following its own
Code and applicable state laws, the City will be liable for any violations, including under

Mr. Marquette E. Hawkins
August 29, 2025
Page 2

a writ of mandamus under Civil Procedure Code sections 1094.5 or 1085, and any associated penalties and attorneys' fees.

In recent days the Coalition has received credible information from several individuals in contact with immigration detainees currently held at the California City facility that CoreCivic has begun populating, and is continuing to populate the facility. The facility is now listed as open on ICE's website.[1] Yet, the proposed business license remains "under review" according to the agenda for the Planning Commission's September 2, 2025 regular meeting, and as of a few days ago, City officials assured the public that the facility is not yet open and that contracts between the City and CoreCivic remain unexecuted. If the City has nevertheless taken any action to informally authorize or facilitate the facility's reopening despite the lack of formal approvals, the City will be liable for multiple legal violations, as described herein. Furthermore, if the City considers CoreCivic's current operations as unauthorized and in violation of City ordinance, the City must enforce all applicable laws against CoreCivic until it obtains the proper approvals. Failing to prevent CoreCivic from acting in blatant disregard of City laws could expose the City to additional liability.

## I.    Conversion of the facility requires discretionary approval of a Conditional Use Permit.

We understand that CoreCivic has applied for, and the City is reviewing, a business license to operate an Immigration Processing Center at the existing correctional facility. Although City officials have claimed publicly that only a business license is necessary for the facility to begin operating, and that the City is prohibited from requiring any other permits for the Project, the City's Municipal Code, and the historical record, demonstrate otherwise. The Project cannot proceed without additional discretionary approvals, including a Conditional Use Permit (CUP) to allow the proposed new use.

The Project site is zoned O/RA (Open Space Residential Agricultural). This zoning district does not include immigration detention or processing centers in its list of principally or conditionally permitted uses. *See* California City Municipal Code §§ 9-2.401, 9-2.402. It is a fundamental principle of zoning that uses not principally or conditionally permitted in a particular zone are prohibited. The O/RA zone does allow "Governmental or quasi-governmental correction, probation or prison facilities and services" as a conditionally permitted use. However, even if the City were to consider the Project consistent with this type of use, such use requires that the City publicly consider the discretionary approval of a CUP. Municipal Code § 9-2.402(p). Furthermore, if the

---

[1] California City Detention Facility | ICE.

SHUTE, MIHALY
&~WEINBERGER LLP

Mr. Marquette E. Hawkins
August 29, 2025
Page 3

Planning Commission were to approve a CUP for the Project, the public must be allowed to appeal that decision to the City Council. Municipal Code § 1-4.02(a).[2]

The historical record likewise confirms that a public process involving discretionary approval via a CUP is required here. According to records obtained to date under the California Public Records Act, the City has granted at least one prior CUP (CUP 97-01, attached as Ex. A) on January 15, 1998 (the "1998 CUP"), permitting "Corrections Corporation of America" (CoreCivic's prior name) to establish and operate a 2,304 bed "prison facility" on approximately 70 acres at this location. *See* Ex. A at 1. In 2021, a draft environmental impact report for a proposed expansion of the facility stated that the project would require another CUP based on the project involving a "[g]overnmental or quasi-governmental correction, probation or prison facilit[y] and service[]." Excerpt from 2021 Draft EIR (attached as Ex. B). Thus, on at least two prior occasions, the City has considered changes in use at the site to require a new CUP. The City has offered no plausible reason why this Project is not bound by the same requirement.

Here, the proposed Project would exceed the scope of the 1998 CUP (the most recent CUP that the City has provided to the Coalition) in at least two significant ways. First, the Project proposes to reopen the currently shuttered facility, which was approved in 1998 specifically for the "operat[ion] of a *prison facility* . . . for as long as the use is *conducted in accordance* with the [CUP]" (Ex. A at 3, emphases added), into a new immigration processing center. These are two substantially different uses, particularly considering that the former prison use has been abandoned, and the facility nonoperational, for more than a year. As further discussed below, daily use as an immigration processing center, as opposed to a "prison facility," would have distinct environmental impacts requiring new environmental review under CEQA. Second, CoreCivic requires City discretionary approval to increase the facility's permitted capacity from "2,304 bed[s]" (Ex. A at 4) to 2,560 beds, the publicly stated planned capacity for the immigration detention facility. This is a more than ten percent increase above the prior permitted capacity. Thus, under the zoning code and consistent with City precedent, the City must take discretionary action to approve a new CUP before the Project may commence.

---

[2] Even if the City continues with its current approach to require only a business license, the decision to issue a business license likewise triggers a right of appeal. Municipal Code § 3-2.3.204(c)). The Coalition hereby demands that the City notify the public, and the Coalition directly, immediately upon issuance of a business license to allow the Project to proceed.

SHUTE, MIHALY
&—WEINBERGER LLP

Mr. Marquette E. Hawkins
August 29, 2025
Page 4

Under black-letter law, the City cannot participate in, waive, or consent to a violation of its zoning laws. *League of Residential Neighborhood Advocates v. City of Los Angeles,* 498 F.3d 1052, 1056 (9th Cir. 2007) ("Any such agreement to circumvent applicable zoning laws is invalid and unenforceable"). We understand that CoreCivic has not submitted a CUP application for the Project—because the City has erroneously claimed that none is required—and that the only entitlement currently being considered for the Project is a business license, potentially involving "minor site permit review."[3] If this City proceeds in this manner, the City will violate its own zoning ordinance and the due process requirements for approving a CUP, including, among other things, noticed and public hearings with opportunity to comment, and the right of appeal to the City Council. Municipal Code §§ 1-4.02(a), 9-2.2501. The City cannot circumvent its zoning procedures by allowing the Project to proceed without discretionary review of a CUP.

## II.    The Project requires new environmental review under CEQA.

Any combination of approval of a new or modified CUP, "major" SPR, and the extension of utilities or other public services to the facility is a project subject to CEQA review. Pub. Resources Code § 21080(a) ("this division shall apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to . . . the issuance of conditional use permits."). CEQA requires every public agency to consider a project's potentially significant environmental impacts and prepare an environmental impact report ("EIR") or negative declaration depending on the significance of those impacts after any feasible mitigation. An EIR is an important informational document that allows thorough consideration of a project's environmental impacts, informs the public and public agencies, and enables public participation in land use decisions. *See In re Bay Delta Programmatic Envt'l Impact Report Coordinated Proceedings* (2008) 43 Cal.4th 1143, 1162; *Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 576.

By altering the use and size of the existing facility, the Project would cause physical environmental changes that must be reviewed under CEQA. Pub. Resources

---

[3] Although City officials indicated at the August 5, 2025 Planning Commission meeting that issuance of a business license would also involve a staff-level "minor" site plan review (SPR), there is no information on the City's website or the Municipal Code about when the City decides to apply "minor," as opposed to "major" SPR, which is a discretionary action. The Coalition attempted to obtain relevant information from City staff but were directed instead to submit a formal Public Records Act request for this run-of-the-mill planning guidance. On behalf of the Coalition, we have therefore submitted additional CPRA requests under separate cover for these and other documents relevant to the City's proposed process for considering any Project approvals.

SHUTE, MIHALY
& WEINBERGER LLP

Mr. Marquette E. Hawkins
August 29, 2025
Page 5

Code § 21065. The City has not undertaken any environmental review of the Project and thus has deprived both its decisionmakers and the public of the information necessary to make informed decisions, and meaningfully participate in those decisions.

Through its prior actions concerning the Project site, the City has effectively conceded that CEQA applies here. Per the terms of the 1998 CUP, the City certified a Final Environmental Impact Report purporting to analyze the environmental impacts associated with the use of a "prison facility." Converting the facility to an entirely new use as an immigration detention center, along with increased capacity for detainees, will generate new potential impacts that the City has not previously considered under CEQA. *See e.g., Save Berkeley's Neighborhoods v. The Regents of the University of California* (2020) 51 Cal.App.5th 226, 240. Additionally, expanding and intensifying the use of the existing facility without further CEQA review could violate the terms of any legally binding mitigation previously adopted as part of the 1998 Final EIR, thereby resulting in further CEQA violations.

Importantly, an immigration detention facility has significantly different environmental impacts from a prison facility. Immigration detention is typically shorter-term than incarceration, with detained individuals regularly transferred between facilities. For example, according to one report, 60 percent of detained immigrants are transferred at least once.[4] In addition, people in immigration detention are often transferred to their court hearings on a daily basis or released on parole, bond, or when they win their cases. Additionally, asylum seekers and other immigrants recently detained are brought into the facility often daily. This substantial increase in ingress and egress, combined with the further increase in visits from family and the community to the facility as well as any construction or improvements needed to make the facility comply with federal standards for housing ICE detainees, will result in increased vehicle miles traveled (VMT), traffic noise, air pollution, greenhouse gas emissions, and other impacts that will fall not only upon detainees, their families, and employees, but on California City residents as well. By opening this facility as a detention center without complying with CEQA, the City is risking significant impacts to the public's health and depriving the public of their right to understand the potential environmental effects of this highly impactful Project.

---

[4] American Immigration Council, The Landscape of Immigration Detention in the United States (2018) at 3, 19 available at
https://www.americanimmigrationcouncil.org/research/landscape-immigration-detention-united-states.

SHUTE, MIHALY
&~WEINBERGER LLP

Mr. Marquette E. Hawkins
August 29, 2025
Page 6

**III.    Approval of the Project must comply with Civil Code § 1670.9(d).**

California City is bound by all applicable California state laws, including Civil Code § 1670.9(d), which provides that a city, county, or public agency may not "approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit for the building or reuse of existing buildings by any private corporation . . . to house or detain noncitizens for purposes of civil immigration proceedings " unless the entity has satisfied two conditions.

The first condition requires public notice of the action at least 180 days before the execution of the conveyance or permit. The second condition requires that public comment be solicited and heard on the proposed conveyance or permit action in at least two separate meetings open to the public. Civil Code § 1670.9(d)(1),(2).

Both of these conditions are triggered here. As explained above, the City must consider and approve a CUP before the Project, which would "house or detain noncitizens for purposes of civil immigration proceedings," can open. Even the City's current proposal to issue a mere business license would trigger these conditions, while also violating the Municipal Code and state law for the reasons above. California City has so far failed to publicly notice or agendize any proposed approval related to the Project. In the absence of a properly noticed, agendized, and publicly discussed CUP, the Project cannot open in compliance with California law.

In sum, the City must properly bring the Project forward as a CUP application, must comply with CEQA by conducting a thorough review of the proposed new use's significant environmental impacts, and must abide by the procedural requirements in Civil Code section 1670.9. Any attempt to circumvent the plain language of California's requirements for permitting the Project will expose the City to legal liability.

Very truly yours,

SHUTE, MIHALY & WEINBERGER LLP

Joseph "Seph" Petta

SHUTE, MIHALY
&~WEINBERGER LLP

Mr. Marquette E. Hawkins
August 29, 2025
Page 7

Cc:    Victor Ponto, City Attorney
       Ronald Smith, City Councilmember
       Michael Hurles, City Councilmember
       Salena Coleman, Planning Commissioner
       Ralph Cantrell, Vice Chair, Planning Commission
       Gesele Marsh, Planning Commissioner
       Della Clark, Planning Commissioner
       David Brottlund, Planning Commissioner

# EXHIBIT A

ORIGINAL

### RESOLUTION NO. 01-98-1802
## A RESOLUTION OF THE CITY COUNCIL
## GRANTING CONDITIONAL USE PERMIT 97-01
## PRISON FACILITY

**WHEREAS,** governmental and quasi-governmental uses, such as prison facilities may be permitted in Residential/Agricultural District zones with a conditional use permit (Ord. No. 96-529); and

**WHEREAS,** the property located approximately 0.5 miles South of Twenty Mule Team Parkway, at the terminus of Virginia Boulevard in the North one-half of Section 13, Township 32 South, Range 38 East, Mount Diablo Base and Meridian also known as Assessor's Parcel Number (APN) 350-031-02 is within the R/A, Residential/Agricultural District zone and that a portion of the 320-acre site is zoned Conservation Land, which is a compatible use with the R/A zone as defined by the City of California City General Plan 2012 Land Use Designation Chart; and

**WHEREAS,** Corrections Corporation of America has requested and filed an application with the Planning Commission to establish and operate a 2,304 bed prison facility on approximately 70 acres of the 320-acre above-mentioned address; and

**WHEREAS,** notice of a public hearing was mailed to all property owners within 300 feet of the above-mentioned parcel and published as required by the Zoning Regulations; and

**WHEREAS,** the Planning Commission did conduct a public hearing on January 15, 1998, heard public testimony, and made the following findings:

1. That a prison facility use is necessary for the preservation and enjoyment of a substantial property right.
2. That the operation of a prison facility is in accordance with the objective of Article 4 of the Zoning Regulations, and the purposes of the Residential/Agricultural District.

3. That the prison facility use complies with the applicable provisions of Title 9, Chapter 2 of the Municipal Code.

4. That the Final Environmental Impact Report (EIR) Supplement State Clearinghouse (SCH) #97091045 is certified as adequate and in compliance with California Environmental Quality Act (CEQA) for the proposed prison project.

5. That the Mitigation Monitoring Program dated January 1998 for the proposed prison be adopted as part of Conditional Use Permit 97-01.

6. Buildings must be connected to all utilities (electricity, water, sewer, natural gas, telephone, cable, etc.).

7. Site plan review for the project will be in accordance with Ordinance No. 95-506 and to the satisfaction of the City Engineer.

8. This conditional use permit expires twelve (12) months from that date of the City Council's approval if the prison facility operation is not commenced and diligently pursued.

9. All provisions of the City of California City Municipal Code currently in effect must be complied with.

**WHEREAS,** the Planning Commission hereby approves the conditional use permit and directs that this resolution be prepared and presented to the City Council for the consideration and granting of Conditional Use Permit 97-01.

**APPROVED THIS 15TH DAY OF JANUARY, 1998** by the Planning Commission.

_Reuben W Dennis Jr._

Planning Commission Chairman

Attest:

_Ronna L. Greene_

Planning Secretary

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of California City that the Conditional Use Permit 97-01 is granted to Corrections Corporation of America to establish and operate a prison facility in the North one-half of Section 13, Township 32 South, Range 38 East, Mount Diablo Base and Meridian and shall remain in effect for as long as the use is conducted in accordance with the use permit, its stipulations, and is not otherwise in violation of the Zoning Regulations and Municipal Code.

PASSED, APPROVED AND ADOPTED this __20th__ day of __January__, 1998, by the City Council, by the following Roll Call Vote: AYES: _5_ ; NOES: _0_ ; ABSTAIN: 0; ABSENT: 0.

Mayor

ATTEST:

Secretary
(SEAL)

# PLANNING COMMISSION

Meeting Date:  January 15, 1998

**DATE OF PREPARATION:**  January 8, 1998

**TO:**          Planning Commission

**FROM:**      Planning Director

**SUBJECT:**   Consider Draft Environmental Impact Report (EIR) Supplement
State Clearinghouse (SCH) Number 97091045 for certification for
a prison site located in Section 13, Assessors Parcel Number
(APN) 350-031-02 by applicant Corrections Corporation of
America, and consider Conditional Use Permit 97-01.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## BACKGROUND:

A conditional use permit application has been submitted by Corrections
Corporation of America, 10 Burton Hills Boulevard, Nashville, Tennessee,
37215, to establish and operate a prison facility in Section 13, APN 350-031-02.
The 320-acre project site is located approximately 0.5 miles south of Twenty
Mule Team Parkway, at the terminus of Virginia Boulevard.  Conditional Use
Permit 97-01 is requested in accordance with Ordinance No. 96-529, Section 9-
2.403 that allows for a correctional facility to be operated in the RA zone with
a conditional use permit.  The RA zone designation is a compatible use by the
California City General Plan 2012 for the following:  Conservation Land and
Controlled Development, Public Parks and Recreation or Public Schools.

Corrections Corporation of America is proposing a 2,304 bed prison facility on
approximately 70 acres of the 320-acre Virginia Boulevard property.  This site
was previously evaluated by the California Department of Corrections in 1994
for a prison in EIR No. 93082030.  In accordance with the California

1

# PH 1.

Environmental Quality Act Guidelines Section 15163, a Supplement to the prior EIR has been prepared to address minor changes or additions in the proposed action which have occurred since circulation of a prior EIR.

Staff has reviewed the application and the environmental documents have been prepared by Rust Environment and Infrastructure Incorporated, 18401 Von Karman Avenue, Suite 550, Irvine, CA 92715. The public review period for the Draft EIR Supplement (SCH #97091045) was 45 days and ended December 8, 1997. Staff has provided the necessary notices as required by law. The Planning Commission must review the information, receive pertinent evidence and testimony, make required findings, and approve, modify and approve or deny the application. If approved, the Planning Commission must adopt a resolution setting forth its findings and conditions of approval within thirty (30) days following the closing of the public hearing. The use permit becomes effective when granted by resolution of the Council.

Staff has reviewed the information submitted by the applicant and the EIR Supplement prepared by Rust Environment and Infrastructure, and finds that the use complies with the provisions of the Zoning Regulations and The Municipal Code. Of particular note is the following findings:

1. That a prison facility use is necessary for the preservation and enjoyment of a substantial property right.
2. That the operation of a prison facility is in accordance with the objective of Article 4 of the Zoning Regulations, and the purposes of the Residential/Agricultural District.
3. That the prison facility use complies with the applicable provisions of Title 9, Chapter 2 of the Municipal Code.
4. That the Final Environmental Impact Report Supplement (SCH #97091045) appears adequate and in compliance with CEQA for the proposed prison project.
5. That the Mitigation Monitoring Program has been prepared and submitted by Rust Environment and Infrastructure, and appears adequate and in compliance with the requirements of Section 21081.6 of the Public Resources Code.

2

6. Buildings must be connected to all utilities (electricity, water, sewer, natural gas, telephone, cable, etc.).
7. Site Plan Review for the project will be in accordance with Ordinance No. 95-506 and to the satisfaction of the City Engineer.
8. This conditional use permit expires twelve (12) months from the date of the City Council's approval if the correctional facility construction is not commenced and diligently pursued.
9. All provisions of the California City Municipal Code currently in effect must be complied with.

**RECOMMENDATION:**

The Planning Commission conduct the public hearing and consider the attached resolutions which would make findings and set conditions for certification of EIR Supplement (SCH #97091045) and approval of Conditional Use Permit 97-01. Direct the Planning Director to pass the resolutions onto the City Council for its consideration and approval.

**SOURCE OF FUNDING:** N/A.

**ENVIRONMENTAL ACTION:** The City of California City will be the lead agency in certifying the environmental documents prior to the approval of the conditional use permit. The Planning Commission may want to comment on the environmental documents which will be passed on to the City Council through the staff report.

Attachment:
1. Resolutions
2. Final Supplement EIR Volume II
3. Mitigation Monitoring Program

3

# EXHIBIT B

# Draft Environmental Impact Report

## Correctional Facility at California City

## SCH No. 2017121069

Prepared for | City of California City
21000 Hacienda Boulevard
California City, California 93505

Prepared by | Psomas
5 Hutton Centre Drive, Suite 300
Santa Ana, California 92707

May 2021

**Hydrology and Water Quality**

The majority of storm water on the undeveloped Project site percolates into the ground, with runoff sheet flowing toward the southwest based on the local topography. There is no developed storm drain system serving the site and the surrounding area. Storm water generally percolates into the bare soils of undeveloped land, with stormwater overflows towards Cache Creek to the west and into Koehn Lake to the north during heavy rains.

The Project site is not located within the 100-year or 500-year floodplains (FEMA 2008). The City overlies the Fremont Valley, Antelope Valley, and Harper Valley groundwater basins but the Fremont Valley Groundwater Basin underlies the developed areas of the City. The Fremont Valley Groundwater Basin consists of the Mojave City Subbasin and the California City Subbasin. The City obtains the majority of its potable water from groundwater pumped from the California City Subbasin (Stetson Engineers 2009).

**Land Use and Planning**

In the California City General Plan Designation Map, the site is designated as Controlled Development, Public Parks and Recreation and Public Schools, with a sliver at the northern edge designated as Conservation Land (California City 2016b). The Controlled Development, Public Parks and Recreation and Public Schools designation allows a variety of land uses that are consistent with the goals, objectives, and policies of the City's General Plan and subject to approval of detailed plans that serve to address the social, environmental, and economic concerns of the community. This designation is conditionally compatible with industrial uses, commercial uses, recreational uses, large lot subdivisions, open space uses, agricultural and horticultural uses. Areas designated as Conservation Land include land designated for the protection, preservation and conservation of unique areas (California City 2009).

The site is zoned Residential Agricultural (RA) and Open Space (O). The Controlled Development, Public Parks and Recreation and Public Schools designation is consistent/compatible with the RA and O zoning districts (California City 2009). Governmental or quasi-governmental correction, probation or prison facilities and services are conditionally allowed in the RA zoning district (Municode 2017).

**Public Services and Facilities**

The California City Police Department (CCPD) provides police protection and law enforcement services in the City from their station, located at 21130 Hacienda Boulevard. The department has 13 sworn officers and 6 non-sworn personnel and provides uniformed patrol, investigations, off-road search and rescue, special enforcement, and animal control services (California City 2018).

The California City Fire Department (CCFD) provides fire protection and emergency medical services to the City, as well as fire prevention, fire suppression, fire investigation, public safety education, hazardous material response, technical rescue and domestic threat preparedness. The CCFD has a staff of 13 persons, including a fire chief, 3 captains, 3 fire engineers, and 6 firefighters and its station is located at 20890 Hacienda Boulevard (California City 2016a).

The Mojave Unified School District provides school services in the Project area through the Ulrich Elementary School, California City Middle School, and California City High School. The Kern County Library system has branch libraries in California City, Mojave, and Boron.



**Tara Leal**
Clerk of the Superior Court

**SUPERIOR COURT**
Telephone 661-610-6000
1215 Truxtun Avenue
Bakersfield CA 93301

**JOSEPH PETTA**

**RETURNED VIA USPS**

Date : 09/17/2025

Case No.: BCV-25-103365

Case Name: DIGNITY NOT DETENTION COALITION ET AL VS CITY OF CALIFORNIA CITY ET AL

Document: SUMMONS

The attached papers are being returned for the following reason(s): ☐ Check # _____ Returned

☐ This pleading does not appear to be for Superior Court, Kern County.
☐ The attached document is an improper *ex-parte* communication and has not been considered by the Court.
☐ Fee of $_____ required or a Request to Waive Court Fees must be submitted.
☐ **Application for Waiver of Fees missing attachment(s):**
    ☐ Last three (3) paystubs, if employed.
    ☐ Certified Copy of Statement of Account for previous six (6) months certified by Dept. of Corrections
    ☐ Trust Account Withdrawal Order form (CDC form 193) completed by the Dept. of Corrections
        indicating $3.00 fee to Dept. of Corrections has been paid or insufficient funds in the account to cover.
☐ Does not conform to Rule 2.100-2.119, California Rules of Court, as to form and format.
☐ Superior Court case number is wrong, incomplete, or missing.
☐ Consolidated matter: All consolidated case numbers must be listed in the heading with the lead case listed first.
☐ Consolidated matter:
☐ Title is incorrect or missing parties.
☒ Summons does not conform to complaint/cross-complaint/petition. **Summons does not conform exact to Complaint.**
☐ Not an original.  Copies are not acceptable.
☐ Copies must be provided if *endorsed* copies are requested.  Submit one original plus _____ copy(ies).
☐ Does not conform to Kern County Local Rule/Code:
☐ Must use Mandatory Judicial Council form.
☐     is not eligible for filing.  Reason:
☐ Item(s) # _____ incomplete.
☐ Missing required forms/attachment:
☐ Original Will must be presented at the time of filing petition.
☐ Signature missing:
☐ Date and place of execution not completed.
☐ Document(s) must be verified.
☐ Show date, time, and location of hearing pursuant to California Rules of Court.
☐ The date you have noticed this matter is a Court holiday/weekend.
☐ Acknowledgement of Receipt/Citation must be attached to the completed proof of service.
☐ Attach Proof of Service on opposing party.
☐ Correct Proof of Service**:**
☐ Not appraised by the Probate Referee.
☐ Order/Judgment does not conform to the Court minutes.
☐ Order page does not contain enough information regarding case; need at least three lines of text with identifying information for order and case (short title case and case number).
☐ Dismissal cannot be entered for the following reasons:
☐ Other:

**Tara Leal**
CLERK OF THE SUPERIOR COURT

By:  *Alexandra Valles Guerrero*

**ANY CORRESPONDENCE REQUIRING AN ANSWER FROM THE COURT MUST BE ACCOMPANIED BY A SELF-ADDRESSED STAMPED ENVELOPE LARGE ENOUGH TO RETURN DOCUMENTS**

_____, Deputy Clerk