JOSEPH D. PETTA (State Bar No. 286665)
MINDY K. JIAN (State Bar No. 336139)
RYAN K. GALLAGHER (State Bar No. 344349)
SHUTE, MIHALY & WEINBERGER LLP
550 California Street, Suite 1200
San Francisco, California 94104
Telephone:    (415) 552-7272
Facsimile:    (415) 552-5816
petta@smwlaw.com
mjian@smwlaw.com
rgallagher@smwlaw.com

Attorneys for Dignity Not Detention Coalition

CALLARD E. COWDERY (State Bar No. 329697)
AFRICAN ADVOCACY NETWORK
3106 Folsom Street
San Francisco, California 94110
Telephone:    (415) 889-9573
ccowdery@aansf.org

Attorneys for John Doe

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| DIGNITY NOT DETENTION COALITION and JOHN DOE,<br><br>Petitioners and Plaintiffs,<br><br>v.<br><br>CITY OF CALIFORNIA CITY and CORECIVIC, INC.,<br><br>Respondents and Defendants.<br><br>CORECIVIC, INC.,<br><br>Real Party in Interest. | Case No. 1:25-cv-01292-JLT-CDB<br><br>**PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          July 27, 2026<br>Time:          9:00 a.m.<br>Courtroom:   4, 7th Floor<br><br>Hon. Jennifer L. Thurston, District Judge<br>Hon. Christopher D. Baker, Magistrate Judge<br><br>Trial Date:    None set<br><br>Filed concurrently with Declaration of Joseph D. Petta; Declaration of Grisel Ruiz; Declaration of Callard E. Cowdery |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................. 3

NOTICE OF MOTION AND MOTION ........................................................................... 7

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 8

INTRODUCTION ............................................................................................................ 8

STATEMENT OF FACTS ............................................................................................... 9

LEGAL STANDARD ..................................................................................................... 11

ARGUMENT .................................................................................................................. 12

I.     This Court Lacks Subject Matter Jurisdiction Under the Federal Officer Removal Statute. ............................................................................................................. 12

    A.     Removal is improper because CoreCivic cannot show that it was acting under federal authority in violating state and local law. ...................................... 12

    B.     Petitioners' claims that CoreCivic failed to comply with procedural requirements are not "related to" its contractual obligations with ICE. ............... 16

    C.     CoreCivic does not have any colorable federal defense to Petitioners' claims against it. ................................................................................. 17

        1.     Federal law does not impliedly preempt the City's permitting and licensing requirements or Petitioners' UCL cause of action. ..................... 18

            a.     CoreCivic cannot overcome the presumption against preemption. .................................................................. 19

            b.     The generally applicable permitting and procedural requirements are not preempted because they do not prevent CoreCivic from carrying out federal immigration policy. ............... 21

        2.     CoreCivic is not entitled to "derivative" sovereign immunity. ................... 23

        3.     The intergovernmental immunity doctrine does not absolve federal contractors from complying with the Municipal Code and state law. ........ 24

II.    Petitioners Are Entitled to Their Reasonable Costs and Attorneys' Fees Incurred as a Result of Removal. ............................................................................... 29

CONCLUSION ............................................................................................................... 32

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arizona v. United States*,
567 U.S. 387 (2012)......................................................................................................20,21

*Beneficial Nat'l Bank v. Anderson*,
539 U.S. 1 (2003)..............................................................................................................18

*Cabalce v. Thomas E. Blanchard & Assocs.*,
797 F.3d 720 (9th Cir. 2015) .......................................................................................14, 23

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)...........................................................................................................18

*Chevron USA Inc. v. Plaquemines Parish, Louisiana*,
146 S. Ct. 1052 (2026)...............................................................................................12, 16, 7

*Childs v. San Diego Family Housing, LLC*,
150 F.4th 1151 (9th Cir. 2025) .........................................................................................14

*City of Burlington v. Dague*,
505 U.S. 557 (1992)...........................................................................................................30

*CoreCivic, Inc. v. Governor of New Jersey*,
145 F.4th 315 (3d Cir. 2025)......................................................................................25, 26, 27

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ...............................................................................12, 13, 14

*DeCanas v. Bica*,
424 U.S. 351 (1976).............................................................................................................20

*Doe v. Cedars-Sinai Health System*,
106 F.4th 907 (9th Cir. 2024) .....................................................................................12, 16

*FTC v. Bunte Bros.*,
312 U.S. 349 (1941)...........................................................................................................19

*Fidelitad, Inc. v. Insitu, Inc.*,
904 F.3d 1095 (9th Cir. 2018) .........................................................................................13

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) .........................................................................................30

3

*GEO Group, Inc. v. Inslee*,
  151 F.4th 1107 (9th Cir. 2025) ......................................................................................*passim*

*GEO Group, Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ...........................................................................25, 26, 27

*GEO Group, Inc. v. Menocal*,
  146 S. Ct. 774 (2026) ..................................................................................................23

*Green v. Baca*,
  225 F.R.D. 612 (C.D. Cal. 2005) ................................................................................30

*Hencely v. Fluor Corp.*,
  146 S. Ct. 1086 (2026) ................................................................................................21

*Hiken v. Dep't of Def.*,
  836 F.3d 1037 (9th Cir. 2016) .....................................................................................31

*Jordan v. Multnomah County*,
  815 F.2d 1258 (9th Cir. 1987) .....................................................................................30

*Knox v. Brnovich*,
  907 F.3d 1167 (9th Cir. 2018) .....................................................................................19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).....................................................................................................11

*Lake v. Ohana Mil. Communities, LLC*,
  14 F.4th 993 (9th Cir. 2021) ...........................................................................11, 13, 14

*Lussier v. Dollar Tree Stores, Inc.*,
  518 F.3d 1062 (9th Cir. 2008) .....................................................................................29

*M'Culloch v. State*,
  17 U.S. 316 (1819).......................................................................................................25

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005).....................................................................................................29

*McHenry County v. Kwame Raoul*,
  44 F.4th 581 (7th Cir. 2022) ...........................................................................20, 21, 26, 28

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987).......................................................................................................18

*Nixon v. Mo. Mun. League*,
  541 U.S. 125 (2004).....................................................................................................19

4

*Nwauzor v. GEO Group, Inc.*,
  127 F.4th 750 (9th Cir. 2025) ............................................................................*passim*

*Parker v. Brown*,
  317 U.S. 341 (1943)...........................................................................................19

*Polee v. Central Contra Costa Transit Authority*,
  516 F. Supp. 3d 993 (N.D. Cal. 2021) ..................................................................32

*Polo v. Innoventions Int'l, LLC*,
  833 F.3d 1193 (9th Cir. 2016) .............................................................................30

*Printz v. United States*,
  521 U.S. 898 (1997).............................................................................................18

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) ...............................................................................32

*Saldana v. Glenhaven Healthcare LLC*,
  27 F.4th 679 (9th Cir. 2022) ................................................................................11

*Sheetz v. County of El Dorado*,
  601 U.S. 267 (2024).............................................................................................19

*Solutions 30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC*,
  No. 4:21-CV-02423-YGR, 2022 WL 1814439 (N.D. Cal. Apr. 28, 2022)..........................31

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ...........................................................................*passim*

*United States v. Washington*,
  596 U.S. 832 (2022)...................................................................................25, 27, 28

*Watson v. Philip Morris Companies, Inc.*,
  551 U.S. 142 (2007)..............................................................................................13

*Yearsley v. W.A. Ross Construction Co.*,
  309 U.S. 18 (1940)................................................................................................23

**Federal Statutes**

6 U.S.C. § 112......................................................................................................20
8 U.S.C. § 1231....................................................................................................20
28 U.S.C. § 530C..................................................................................................20
28 U.S.C. § 1331..................................................................................................11
28 U.S.C. § 1332..................................................................................................11
28 U.S.C. § 1442..........................................................................................*passim*

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

28 U.S.C. § 1447 ............................................................................................. 7, 11, 29, 30

**California Statutes**

Business and Professions Code
§17201 ................................................................................................................... 28
§17203 ................................................................................................................... 22

California's Unfair Competition Law ............................................................ *passim*

Code of Civil Procedure
§1670.9 ................................................................................................... 22, 26, 27, 28

Penal Code
§9506 ..................................................................................................................... 23

**Other Authorities**

California City Municipal Code
§3-2.3.201 ................................................................................................ 22, 26, 28
§9-2.102 ................................................................................................................. 22
§9-2.402 ................................................................................................................. 22

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 27, 2026, at 9:00 a.m., or as soon thereafter as counsel may be heard by the Court, located at Robert E. Coyle United States Courthouse at 2500 Tulare Street, Fresno, California, in the courtroom of the Honorable Jennifer L. Thurston, Petitioners Dignity Not Detention Coalition (the "Coalition") and John Doe will and hereby do move the Court for an order remanding this case to state court and awarding reasonable costs and attorneys' fees incurred in bringing this motion. Petitioners move to remand this action on the grounds that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1442(a)(1). Petitioners also request that, pursuant to 28 U.S.C. § 1447(c), the Court enter an order awarding Petitioners just costs and actual expenses incurred due to removal.

The parties have met and conferred regarding the issues raised in this Motion to Remand. Counsel for Petitioners sent two emails to counsel for Respondents summarizing the grounds for remand and asking whether Respondents would oppose the Motion on those grounds. After Petitioners' counsel agreed to allow additional time to respond, counsel for CoreCivic responded expressing disagreement with Petitioners' federal officer removal argument. Counsel for CoreCivic also questioned the timing of Petitioners' Motion. Petitioners' counsel responded by explaining that Petitioners had only recently gained access to the contract at the center of CoreCivic's Notice of Removal after several months of being denied access by CoreCivic. Petitioners' counsel also stated that they would proceed with filing the instant Motion. Counsel for the City did not respond to meet and confer communications.

This motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities; declarations of Joseph D. Petta, Grisel Ruiz, and Callard E. Cowdery; pleadings and papers on file herein; and upon such other matters as may be presented to the Court at the time of the hearing.

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Despite Defendants' attempts to suggest otherwise, this case is fundamentally about local land use law. CoreCivic, Inc. ("CoreCivic") is a private company that chose to reopen a shuttered correctional facility as an immigration detention center. Like any other company seeking to do business within California City (the "City"), CoreCivic must obtain the required City approvals before it can begin operations. Petitioners Dignity Not Detention Coalition (the "Coalition") and John Doe sued to ensure that CoreCivic complies with these universally applicable local permitting and licensing requirements as well as state procedural requirements. Petitioners brought two claims against CoreCivic: one under the City's Municipal Code and another under California's Unfair Competition Law ("UCL"). These are garden-variety state and local law claims that have nothing to do with the substance, scope, or direction of federal immigration enforcement.

Yet, CoreCivic removed this action to federal court, claiming that this Court has subject-matter jurisdiction due to CoreCivic's contractual relationship with the federal Immigration and Customs Enforcement agency ("ICE"). However, CoreCivic has not met its burden to show that removal is warranted under the federal officer removal statute. First, it has not established that it was acting under ICE in deciding to flaunt state and local laws. In fact, the very contract on which CoreCivic relies for removal explicitly requires compliance with those laws. Indeed, federal detention contracts, including the prior intergovernmental agreement governing this very facility, routinely require compliance with all applicable federal, state, and local laws.

Second, the claims in this action do not relate to CoreCivic's ICE contract. Performance of its contractual obligations did not necessitate prematurely reopening the Facility in violation of local and state laws. This is particularly so where the contract itself proscribes the very actions Petitioners challenge here.

Third, CoreCivic has not established any colorable federal defenses to Petitioners' claims against it. CoreCivic's preemption arguments fail because the City's permitting requirements, the UCL, and Senate Bill ("SB") 29 regulate in areas of historic state and local power, are entitled to

8

a strong presumption against preemption, and impose only limited procedural obligations that do not prevent the federal government from carrying out its immigration policy. CoreCivic's derivative sovereign immunity defense fails because its contract directed it to comply with local and state permitting requirements, not override them. And CoreCivic's intergovernmental immunity defense fails because the local and state laws neither directly regulate nor discriminate against the federal government; the permitting requirements apply equally to every entity seeking to operate a business within the City and state law does not treat CoreCivic less favorably than comparable non-federal entities.

CoreCivic's own conduct since removal further exposes the hollowness of its jurisdictional claims. After insisting that this case belonged in federal court, CoreCivic moved to dismiss the entire action for lack of subject matter jurisdiction on standing grounds—a motion that, if granted, would send this case right back to state court. CoreCivic cannot drag Petitioners into federal court only to then argue that no federal court has jurisdiction to hear the case at all. This sequence reveals CoreCivic's removal for what it was: a tactical maneuver designed to delay resolution on the merits and impose additional costs on Petitioners and the Court, not a good-faith assertion of federal jurisdiction.

The Court should remand this case to Kern County Superior Court and award Petitioners the reasonable costs and attorneys' fees they have incurred as a result of CoreCivic's improper removal.

## STATEMENT OF FACTS

The California City Correctional Facility at issue in this litigation ("Facility") is owned by CoreCivic and has sat in a remote area about seven miles east of the City's small downtown since its construction in 1999. Dkt. 1-3 (Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief and Damages ("Petition" or "Pet.")) ¶ 18. For decades, CoreCivic operated the Facility almost exclusively as a state and federal prison. *Id.* ¶¶ 18, 21. The Facility closed in March 2024 after the California Department of Corrections and Rehabilitation declined to renew its lease with CoreCivic. *Id.* ¶ 24; Dkt. 1 (Notice of Removal ("Notice")) ¶ 35.

9

In 2025, without any City approvals or public hearings, CoreCivic suddenly reopened the Facility as an immigration detention center. Pet. ¶¶ 30, 33. And on or around August 27, 2025, ICE began transferring immigrant detainees to the Facility. *Id.* ¶ 33; Notice ¶ 39. The Facility has continued to operate without the necessary City approvals, including a business license as required by the City's Municipal Code. Pet. ¶¶ 44-49, 65; Dkt. 18 (CoreCivic's Response to Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction) at 31 ("CoreCivic has a pending business license application . . .").

On September 16, 2025, Petitioners filed suit in Kern County Superior Court against CoreCivic and the City, challenging their disregard of state and local laws. Pet. at p. 2. Specifically, Petitioners brought two causes of action against CoreCivic: one for violation of the Municipal Code and one under the UCL for unlawful business practices.[1] Pet. ¶¶ 64-77 (fourth and fifth causes of action). CoreCivic subsequently removed the case to federal court, alleging that Petitioners' claims against CoreCivic warranted removal under the federal officer removal statute (28 U.S.C. § 1442(a)(1)) and citing to its contractual obligations as a federal contractor. *See* Notice.

While this litigation has been pending, Petitioners have repeatedly tried to obtain CoreCivic's federal contract to verify CoreCivic's allegations regarding the scope of its employment by the federal government. CoreCivic has refused multiple direct requests by Petitioners' counsel and has opposed attempts to obtain the contract through early discovery. Declaration of Joseph D. Petta (filed concurrently) ("Petta Decl.") ¶¶ 3-8, 12. At the beginning of May, the federal government released a redacted version of ICE's contract with CoreCivic relating to the Facility. *Id.* ¶ 14, Ex. G. This contract expressly requires that CoreCivic will provide its services "in accordance with the state and local laws, standards, policies, procedures for firearms requirements or court orders applicable to the operations of the facility." *Id.*, Ex. G at 3. The contract then mandates that "where there is a conflict in requirements, the most stringent standard

---

[1] Petitioners also brought three claims against the City: (1) unlawful approval of the Project in violation of the City's Municipal Code and state planning and zoning law, (2) failure to enforce the City's Zoning Code, and (3) violation of SB 29. Pet. ¶¶ 39-63.

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

shall apply." *Id.* It also specifies that CoreCivic "shall obtain all required permits and licenses by the date of contract award. [CoreCivic] must . . . be licensed as a qualified security service company in accordance with the requirements of the district, municipality, county, and state in which the facility is located." *Id.*, Ex. G at 4.

On January 16, 2026, CoreCivic moved to dismiss this litigation for lack of subject matter jurisdiction, the effect of which would remand this action back to state court. *See* Dkt. 50 (CoreCivic's Motion to Dismiss). Petitioners dispute that they lack Article III standing, and have accordingly opposed CoreCivic's motion to dismiss. Dkt. 55 (Plaintiffs' Opposition to CoreCivic's Motion to Dismiss and City's Joinder). As of the filing of this Motion to Remand, CoreCivic's Motion to Dismiss remains pending before this Court.

The parties met and conferred regarding the issues raised in this Motion but were unable to reach a resolution. Petta Decl., ¶¶ 36-37, Ex. M. Petitioners now move to remand.

## LEGAL STANDARD

Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may hear cases only when they have subject matter jurisdiction either through "diversity of citizenship" or "federal question" jurisdiction. 28 U.S.C. §§ 1331, 1332. Accordingly, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Defendants bear the burden of demonstrating that subject matter jurisdiction exists and removal was proper. *Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Where a defendant has removed pursuant to the federal officer removal statute, it "bear[s] the burden of proving by a preponderance of the evidence that the . . . requirements for removal jurisdiction are factually supported." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (quoting *Lake v. Ohana Mil. Communities, LLC*, 14 F.4th 993, 1000 (9th Cir. 2021)). Where a defendant fails to meet its burden, remand is mandatory. 28 U.S.C. § 1447(c).

## ARGUMENT

**I.  This Court Lacks Subject Matter Jurisdiction Under the Federal Officer Removal Statute.**

CoreCivic asserts that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Notice ¶¶ 13-18. As the removing party, CoreCivic must therefore show that (1) it is "acting under" a federal officer; (2) and Petitioners' claims are "for or relating to" CoreCivic's actions taken under color of federal office; and (3) that CoreCivic "can assert a colorable federal defense." *Chevron USA Inc. v. Plaquemines Parish, Louisiana*, 146 S. Ct. 1052, 1057-58 (2026) ("*Plaquemines*"); *see also Doe v. Cedars-Sinai Health System*, 106 F.4th 907, 913 (9th Cir. 2024) ("*Cedars-Sinai*") (removing entity must establish that: "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions and plaintiff's claims; and (c) it can assert a colorable federal defense.") (citation omitted). Here, CoreCivic has failed to establish that it was acting under its federal authority in deciding to prematurely open the Facility and thereby violate the City's Municipal Code and the state UCL. Its notice of removal offers only general references to its contractual relationship with ICE, rather than evidence that its federal obligations required it to begin operations without complying with applicable laws. Similarly, Petitioners' claims do not "relate to" CoreCivic's federal obligations because the actions that Petitioners challenge were far from necessary to comply with CoreCivic's purported federal contract; they were prohibited by that very contract. Finally, CoreCivic has not established that it has a colorable federal defense to Petitioners' claims. Its general references to a contract with ICE and the federal government's interest in furthering its immigration policy do not show that the federal government intended to preempt local land use and consumer protection laws from applying to detention centers. For similar reasons, CoreCivic is not entitled to derivative sovereign immunity or intergovernmental immunity. The Court should grant Petitioners' Motion and remand this case to state court.

**A.  Removal is improper because CoreCivic cannot show that it was acting under federal authority in violating state and local law.**

The removing party must show that it was "acting under a federal officer in performing some act under color of federal office." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755

12

(9th Cir. 2022) (internal quotation marks omitted); *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). This relationship with the federal officer or agency "typically involves 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151. Removal is not appropriate merely because a party has "enter[ed] into an arm's-length business arrangement with the federal government" or even where a corporation's activities are "highly supervised and monitored." *County of San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 152-53); *Lake*, 14 F.4th at 1004. Rather, the removing party must establish that its challenged actions were "essentially ordered or demanded by Federal authority." *County of San Mateo*, 32 F.4th at 759 (citation omitted); *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1100-01 (9th Cir. 2018) (defendant not "entitled to removal as a government contractor," but must show that the contract covered equipment at issue).

Here, the Notice states that CoreCivic is "acting under" a federal officer because it is assisting ICE with "the provision of housing, sustenance, programming, and medical care to federal immigration detainees housed at the [Facility] while they await the completion . . . of their federal immigration proceedings." Notice ¶ 51. It asserts that the acting under requirement is satisfied because "CoreCivic was acting under the direction of ICE . . . when it commenced operation of the [Facility] to immediately begin housing ICE detainees." *Id.* ¶ 55. However, these general references to a concurrent agreement with ICE are insufficient. CoreCivic fails to show, by a preponderance of evidence, that federal government orders required CoreCivic to unlawfully begin operating the Facility without obtaining the necessary permit and business license.

For example, in *Lake*, the plaintiff brought state law landlord-tenant, torts, trespass, and nuisance claims against the property management company for a housing project on a Marine Corps base. 14 F.4th at 998-99. The plaintiff's claims centered around the defendants' failure to disclose information about pesticide contamination of the underlying land. *Id.* at 999. The defendants removed, arguing that the federal officer removal statute applied because the Navy had significant control over the housing project (e.g., imposing restrictions on the number of residents, retaining the right to consent to financial and physical changes to the property and its management). *Id.* at 999-1000, 1004. The Ninth Circuit found that the federal officer removal

statute did not apply. Despite the Navy's authority over other aspects of the housing project, it found that the "Defendants do not argue that the Navy had control over [the] decision whether to disclose the pesticide contamination." *Id.* at 1004. Thus, the defendants did not satisfy the acting under requirement because they did not show that "a federal officer directed the defendant to take the action challenged." *Id.* at 1004-05.

Likewise, in *Childs v. San Diego Family Housing, LLC*, 150 F.4th 1151 (9th Cir. 2025), the Ninth Circuit upheld remand where defendants failed to establish that the underlying federal contract required them to undertake the actions challenged by plaintiffs. *Id.* at 1160. Plaintiffs brought claims for failure to inspect, warn of, cure, and reasonably manage water intrusion and mold issues. *Id.* The defendants removed to federal court, arguing that federal officer removal was proper because the alleged injuries arose during the defendant contractor's performance of its contractual obligations with the Navy. *Id.* at 1154, 1160. The Ninth Circuit disagreed. Even though the Navy-approved operations and management plan included a mold management plan and established "general federal oversight," nothing in the federal contract specifically prevented defendants from further investigating mold complaints or taking additional action to remediate mold-related issues. *Id.* at 1160-61  In other words, the defendants "fail[ed] to show how their challenged actions occurred *because* of what they were asked to do by the Government." *Id.* at 1160 (internal quotation marks omitted); *see also Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 728-29 (9th Cir. 2015) (remand upheld where contractor did not show that the federal government specifically directed the actions giving rise to the claims, even though the acts "occur[ed] under the general auspices of federal direction").

As in *Lake* and *Childs*, it is not enough that CoreCivic generally refers to its agreement with ICE to provide for detention of people at the Facility. The mere claim that a contract exists does not demonstrate that ICE exercised any control over CoreCivic's compliance with local licensing and permitting requirements. CoreCivic must establish, by a preponderance of the evidence, that it had to operate the Facility without the required permit or business license directly because of its federal contract. *See Lake*, 14 F.4th at 1004-05; *Childs*, 150 F.4th at 1160-62; *County of San Mateo*, 32 F.4th at 759-60 (defendant was not acting under federal agency where it

14

entered an "arm's-length business agreement" for purchase and sale of a commercial service). Here, CoreCivic has provided no such evidence.

To the contrary, CoreCivic's contract with ICE *requires* it to comply with state and local laws. It expressly mandates that CoreCivic shall operate "in accordance with the state and local laws . . . applicable to the operations of the facility." Petta Decl., Ex. G at 3. The contract even specifically requires that CoreCivic "shall obtain all required permits and licenses by the date of contract award . . . [and] must . . . be licensed as a qualified security service company in accordance with the requirements of the district, municipality, county, and state in which the facility is located." *Id.*, Ex. G at 4 (Section 1.3.2); *see also id.*, Ex. G at 55-56 (requiring compliance with state and local labor, health, safety, and environmental laws and regulations). Nearly identical requirements have appeared in the prior intergovernmental agreement regarding the operation of the Facility. *See* Dkt. 17-1 (Declaration of City Planner Anupama Doravari in Support of Opposition to Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Planner Decl.")), Ex. B at 4 (requiring "compl[iance] with . . . California laws and regulations," and providing that "[s]hould a conflict exist between any of the aforementioned standards, the most stringent shall apply"). And such requirements have appeared in the ICE contracts at issue in the Ninth Circuit's most recent immigration contractor immunity cases. *See Nwauzor v. GEO Group, Inc.*, 127 F.4th 750, 770-71 (9th Cir. 2025) (quoting ICE contract as requiring federal detention center operator "to comply with 'all applicable federal, state, and local laws and standards'" and to adhere to "'the most stringent standard'" if a conflict exists); *GEO Group, Inc. v. Inslee*, 151 F.4th 1107, 1117 (9th Cir. 2025) ("*Inslee*") (same); *see also United States v. California*, 921 F.3d 865, 886 n.10 (9th Cir. 2019) (citing ICE and DHS contracts with similar requirements). Thus, CoreCivic could not have been "acting under" direction of a federal officer when it violated the very local and state laws its federal contract required CoreCivic to follow.

Because CoreCivic cannot meet its burden of establishing that it was acting under federal authority in undertaking the challenged conduct, the Court must grant Petitioners' Motion. *See*

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

*Cedars-Sinai*, 106 F.4th at 913 (declining to reach federal defense analysis where defendant failed to establish that it was acting under federal direction).

**B.      Petitioners' claims that CoreCivic failed to comply with procedural requirements are not "related to" its contractual obligations with ICE.**

To meet its burden of showing that removal is proper, CoreCivic must also establish that Petitioners' lawsuit is "for or relating to" any actions that CoreCivic has taken under color of federal office. *See* 28 U.S.C. § 1442(a)(1); *Plaquemines*, 146 S. Ct. at 1057. Although "relating to" is broadly defined, its definition is not "so broad that it is meaningless." *Plaquemines*, 146 S. Ct. at 1060 (citation omitted). This element requires "a close relationship" between the claims and any federally-authorized actions, not one that is "tenuous, remote, or peripheral." *Id.* at 1061 (internal quotation marks omitted). In its Notice, CoreCivic asserts that it has "a federal contract with ICE to provide secure residential detention services at the [Facility]." Notice ¶ 53. But Petitioners do not challenge CoreCivic's right to operate the Facility or the manner in which it does so; Petitioners argue that CoreCivic failed to comply with local and state law procedural requirements *prior* to opening the Facility. Petitioners' claims are thus removed from, and not "related to," CoreCivic's federal obligations. Because this requirement is independent of the "acting under" element discussed above, the lack of a close connection between Petitioners' claims and CoreCivic's purported federal obligations provides a separate ground for remand. *See Plaquemines*, 146 S. Ct. at 1058, 1062 n.5 (discussing "relating to" requirement separate from "the other requirements of federal officer removal").

By contrast, in *Plaquemines*, the Supreme Court recently held that a lawsuit challenging Chevron's crude oil production "related to" Chevron's federal wartime contract to produce refined crude oil. Plaintiffs challenged Chevron's crude oil production activity, arguing that it violated state law because Chevron failed to obtain the necessary permit and unlawfully used environmentally harmful practices such as vertical drilling and steel tanks instead of earthen pits at well heads. *See Plaquemines*, 146 S. Ct. at 1059. The Fifth Circuit held that the lawsuit was not "related to" Chevron's contract for oil refining because Plaintiffs specifically challenged its crude oil production, not refinement. *Id.* at 1060. The Court disagreed. It found that the "Government

16

knew that to refine crude oil . . . Chevron needed crude oil" and the supervising government agency "required [refined oil] production methods that increased crude-oil production," such as vertical drilling. *Id.* at 1058, 1062. It also cited evidence that Chevron's ability to refine oil was directly related to its capacity to produce crude oil. *See id.* at 1061. Thus, Plaintiffs lawsuit challenged conduct—crude oil production—which was both contemplated by Chevron's federal contract and required in order to fulfill its obligations under that contract for refinement of crude oil. Because crude oil production was so "closely connected" to Chevron's performance of its federal duty to refine crude oil, Chevron had satisfied the "relating to" requirement for federal officer removal.

By contrast, no such connection exists between CoreCivic's procedural violations here and its purported obligation to operate the Facility and house civil detainees. *See* Notice ¶¶ 40-41. Unlike in *Plaquemines*, here, the violation of permitting, licensing, and notice requirements was not a necessary prerequisite to CoreCivic's operation of the Facility. Whereas the defendant in *Plaquemines* could not have met the Government's wartime need "to increase to a maximum the production of [refined oil] in the shortest possible time" without producing crude oil in the manner that it did (*see Plaquemines*, 146 S. Ct. at 1061-62 (citation modified)), CoreCivic could have complied with its purported obligation to house federal detainees without violating the Municipal Code or UCL. In other words, Petitioners do not challenge any conduct which is inherent in CoreCivic's obligation to house detainees such as its ability to operate the Facility under specified conditions. Instead, Petitioners' claims are against CoreCivic's separate and peripheral decision to forgo any attempt to comply with local and state procedural requirements before operating a business within the City. And again, CoreCivic's federal contract expressly *prohibits*, not requires, the actions challenged here. *See supra*, Section I.A. Accordingly, CoreCivic has also failed to establish the "relating to" requirement for federal officer removal.

### C.    CoreCivic does not have any colorable federal defense to Petitioners' claims against it.

The Court need not consider the possible merits of any federal defenses because it cannot establish either of the other two requirements for federal removal. Regardless, CoreCivic also

17

cannot meet its burden of establishing colorable federal defenses. CoreCivic's Notice asserts that it will raise three federal defenses in response to the Petition: implied preemption; derivative sovereign immunity; and intergovernmental immunity. Notice ¶¶ 57-75. However, none of these defenses apply to CoreCivic here.

First, federal law does not impliedly preempt the City's land use and zoning laws, the UCL, or SB 29 because these laws impose limited procedural requirements in areas of historic local power and are entitled to a strong presumption against preemption. Second, CoreCivic is not entitled to derivative sovereign immunity because its federal contract required it to comply with state and local permitting laws and thus does not override those same laws. Third, the intergovernmental immunity doctrine does not shield CoreCivic because the local and state laws neither directly regulate nor discriminate against the federal government; they apply equally to all entities seeking to operate a business within the City and simply require CoreCivic to obtain proper permits and licenses before commencing operations. To the extent that SB 29 applies against CoreCivic, it does not treat any similarly situated non-federal actors more favorably than federal contractors. Accordingly, removal under 28 U.S.C. § 1442(a)(1) is improper for the separate reason that CoreCivic does not have a colorable federal defense.[2]

### 1. Federal law does not impliedly preempt the City's permitting and licensing requirements or Petitioners' UCL cause of action.

The Notice asserts that Petitioners' claims are impliedly preempted by federal law because they conflict with federal detention directives and standards. Notice ¶¶ 70-74. But under the Constitution's federalist system, states and local governments "retain[] 'a residuary and inviolable sovereignty' . . . within their proper sphere[s] of authority." *Printz v. United States*, 521 U.S. 898, 919, 928 (1997). Courts are reluctant to interfere with this essential sovereignty by reading

---

[2] Nor could CoreCivic rely on only its asserted federal defenses to establish subject matter jurisdiction. The Supreme Court has repeatedly and consistently held that federal defenses, including the defenses of federal preemption and intergovernmental immunity, do not create subject matter jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

18

congressional enactments to "interpos[e] federal authority between a State and its . . . subdivisions." *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140-41 (2004); *Parker v. Brown*, 317 U.S. 341, 351 (1943) ("an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress."). Therefore, when a local government "regulates in an area of historic state power," there is a "presumption against preemption." *Nwauzor*, 127 F.4th at 767 (quoting *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018)). Here, this presumption applies to the permitting and UCL provisions that are the bases of Petitioners' claims against CoreCivic because those laws regulate in areas of historic local and state power. And CoreCivic cannot overcome this presumption because none of the statutory provisions identified in the Notice prohibit compliance with permitting laws or the UCL.

Even if CoreCivic could overcome the presumption against preemption, it cannot show that either field or conflict preemption applies. The state and local laws impose limited procedural prerequisites on the opening of the Facility and none of the laws attempt to enter the field of federal immigration detention.

### a.  CoreCivic cannot overcome the presumption against preemption.

To begin, the "presumption against preemption" applies because the Municipal Code and state law provisions at issue regulate "area[s] of historic state power." Local land use decisionmaking has long been recognized as part of the states' inherent police power. *See Nwauzor*, 127 F.4th at 767; *Sheetz v. County of El Dorado*, 601 U.S. 267, 274 (2024) (states have inherent "police power to engage in land-use planning"). Likewise, regulation of unfair competition has been "traditionally left to local custom or local law." *FTC v. Bunte Bros.*, 312 U.S. 349, 354-55 (1941); *Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088 (2008) ("consumer protection laws such as the UCL . . . are within the states' historic police powers and therefore are subject to the presumption against preemption") (internal quotation marks omitted); *see also California*, 921 F.3d at 886 (stating the state's historic police powers include "ensur[ing] the health and welfare of inmates and detainees in facilities within its borders").

19

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

That the local land use laws and application of unfair competition laws might have some indirect effect on immigration actions does not undermine this strong presumption against preemption. "The presumption applies to state laws that affect areas of exclusive federal regulation, such as immigration, even if they have 'incidental effects in an area of federal interest.'" *Nwauzor*, 127 F.4th at 768 (quoting *DeCanas v. Bica*, 424 U.S. 351, 355 (1976)). Here, the Municipal Code and SB 29, to the extent it applies to CoreCivic, may impose minor procedural requirements without being "transform[ed ] into a law that has more than an incidental effect on immigration." *Nwauzor*, 127 F.4th at 768; *see also Inslee*, 151 F.4th at 1123 (holding state health and safety laws applicable to federal contractors were subject to presumption against preemption); *California*, 921 F.3d at 885-86 (similar). Likewise, the UCL does not impede federal immigration policy merely because it helps enforce these procedural requirements. Because the presumption applies, CoreCivic as "the challenging party must show a 'clear and manifest purpose of Congress' to preempt state law." *Inslee*, 151 F.4th at 1123 (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)).

CoreCivic cannot possibly make that showing. The Notice points only to scattered federal statutes that assign responsibility to the U.S. Department of Homeland Security ("DHS") for "arrang[ing] for appropriate places of detention" and that grant the DHS Secretary "reasonable discretion" to enter into contracts to carry out those duties. Notice at 17 (citing 6 U.S.C. § 112(b)(2); 8 U.S.C. § 1231(g); 28 U.S.C. § 530C(a)(4)). Courts have rejected virtually identical preemption arguments premised on the same or similar statutory provisions, explaining that the discretionary language in these statutes does not come close to overcoming the presumption against preemption. For example,  in *McHenry County v. Kwame Raoul*, 44 F.4th 581 (7th Cir. 2022) ("*Raoul*"), the court declined to find that a state law prohibiting local officials from enforcing federal immigration law was preempted. It expressly rejected defendants' reliance on the very same authorities CoreCivic cites to here. *See id.* at 589-91 (finding 8 U.S.C. § 1231(g), the federal government's "'broad, undoubted power over the subject of immigration,'" and statutes authorizing the government to enter into agreements with local governments for immigration detention insufficient to establish field preemption); *see also California*, 921 F.3d at

20

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

885-86 (state law requiring inspection of immigration detention centers not preempted because it did not "regulate whether or where an immigration detainee may be confined" or otherwise bind federal detention decisions). Thus, Congress did not have "*any* intent, let alone 'clear and manifest,' . . . to supersede [state] authority." *California*, 921 F.3d at 886 & n.10; *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1095 (2026) (lawsuit not preempted where plaintiff sued contractor "for conduct that . . . was not authorized by, but was even contrary to, federal instructions"); *Raoul*, 44 F.4th at 591 ("invoking 'some brooding federal interest' is not enough to support a preemption claim"). Moreover, the underlying federal detention contract concedes that preemption does not apply by *requiring* compliance with applicable local and state laws. *See* Petta Decl., Ex. G at 3-4; *Nwauzor*, 127 F.4th at 770-71; *Inslee*, 151 F.4th at 1117.

> **b.    The generally applicable permitting and procedural requirements are not preempted because they do not prevent CoreCivic from carrying out federal immigration policy.**

Even if the presumption does not apply here, CoreCivic's attempts to establish conflict and field preemption also fail because they mischaracterize the nature of the City's permitting requirements, the UCL, SB 29, and Petitioners' claims. Conflict preemption applies where "compliance with both federal and state regulations is a physical impossibility" or "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Arizona*, 567 U.S. at 399 (internal quotation marks omitted). Similarly, field preemption applies where federal regulation is "so pervasive that Congress left no room for the states to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (citation modified). Neither form of implied preemption applies here.

The Municipal Code and UCL claims do not conflict with federal law because they do not prevent the carrying out of federal immigration objectives; the underlying laws merely impose and reinforce limited, procedural requirements on businesses within the City. The Notice argues that conflict preemption applies because "Plaintiffs' request for the Court to override ICE's determination that the [Facility] meets ICE's requirements for contract award presents a direct conflict with the objectives of Congress." Notice ¶ 74. But this argument mischaracterizes the

21

City's zoning laws and SB 29, which do not affect whether the Facility or CoreCivic meet ICE's contracting requirements. They, for example, do not dictate when or where immigrant detainees may be confined or how federal contractors must carry out any delegated authority over immigration policy. *See Inslee*, 151 F.4th at 1123-24 (health and safety requirements that may increase costs of operating detention centers do not "frustrate[] the federal government's ability to detain individuals . . . [or] prevent [contractor] from accomplishing any task that has been required by the federal government").

Nor do the Municipal Code, UCL, or SB 29 attempt to enter the field of immigration detention. The City's zoning laws do not attempt to regulate immigration detention and therefore do not encroach on this "field" of federal law. The Municipal Code sections upon which Petitioners base their claim merely require that CoreCivic comply with the City's permitting and licensing requirements for all businesses and land uses prior to reopening the Facility. *See* Pet. ¶¶ 65-66; California City Mun. Code §§ 3-2.3.201, 9-2.402, 9-2.102(b). They require only that CoreCivic obtain the proper paperwork before it may begin operations. Similarly, the section of SB 29 invoked by Petitioners—Section 1670.9(d)—requires only that certain procedural requirements are met prior to the issuance of any permits for detention centers. Cal. Civ. Code § 1670.9(d) (requiring 180 days' public notice and two public meetings). The UCL merely reinforces that all businesses must operate fairly by complying with these procedural requirements before beginning operations. *See* Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."); *see also Nwauzor*, 127 F.4th at 770 (application of state minimum wage laws to detention center not preempted by federal regulation of immigration policy); *Inslee*, 151 F.4th at 1123 (application of state health and safety laws to detention centers not preempted). None of these provisions even attempt to direct federal immigration policy or would even prevent the ultimate operation of the Facility.

CoreCivic argued that removal was proper because Congress enacted a "comprehensive framework . . . regarding the detention of aliens for removal" and thereby "occupied the field." Notice ¶ 72. But if this were enough to establish preemption here, then no regulation could ever

22

apply to immigration detention contractors. Courts have declined to recognize such a sweeping interpretation of preemption. *See Nwauzor*, 127 F.4th at 770 (rejecting special treatment of regulation of immigration even if it may be "an important and quintessential federal function"); *Inslee*, 151 F.4th at 1123-24. And, of course, other state laws expressly require private detention facilities to "comply with all appropriate state and local building, zoning, health, safety, and fire statutes, ordinances, and regulations." Cal. Penal Code § 9506(a)(1).

Thus, CoreCivic has not carried its burden of proving that Congress intended to preempt the City's licensing and permitting requirements or the state UCL.

### 2.    CoreCivic is not entitled to "derivative" sovereign immunity.

Next, the Notice asserts that CoreCivic has a colorable derivative sovereign immunity defense as a government contractor because "contractors may not be sued for carrying out the sovereign's will." Notice ¶¶ 58-60 (citing *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20 (1940)). But, as the Supreme Court has recently confirmed, private contractors cannot claim sovereign immunity from being sued. In *GEO Group, Inc. v. Menocal*, 146 S. Ct. 774 (2026), a private contractor argued that it was immune from being sued because ICE had "authorized and directed" the contractor's challenged detention policies by entering into a contract with the contractor. *Id.* at 780. The Court rejected this argument, holding that *Yearsley* provided a defense on the merits; it did not establish a separate "'derived' form of sovereign immunity" for contractors. *Id.* at 785. Thus, CoreCivic cannot rely on sovereign immunity at this stage to wholly avoid the merits because "sovereign immunity belongs alone to the Government." *See id*.

Moreover, the underlying federal contract makes clear that the federal government did not intend for CoreCivic to be exempted from the state and local requirements at issue here. The derivative sovereign immunity defense applies only where (1) "the government acted within its constitutional authority" and (2) "the government has *specifically* authorized the contractor's actions at issue." *Nwauzor*, 127 F.4th at 770 (emphasis added). In the immigration context, the Ninth Circuit has made clear that a "contractor whose challenged conduct is not dictated by its contract with the government, but is rather within the contractor's discretion, is not entitled to derivative sovereign immunity." *Id.*; *Cabalce*, 797 F.3d at 732 (where contractor had discretion

23

over challenged activity, derivative sovereign immunity did not apply). Therefore, unless a private party's contract with the federal government "*forbid[s]*" it from complying with applicable state or local laws, the contractor is not entitled to derivative sovereign immunity for violating those laws. *Nwauzor*, 127 F.4th at 771 (emphasis added). CoreCivic cannot establish this second prong because the Contract expressly directed it to comply with, not violate, state and local procedural requirements.

CoreCivic's Notice does not come close to making the requisite showing. It summarily asserts that "CoreCivic is immune from suit for carrying out the sovereign's will and commencing operations of the [Facility] in accordance with ICE's instructions." Notice ¶ 60. But it does not provide any further detail about those instructions and notably does not argue that its federal contract *required* it to skirt applicable permitting and licensing requirements. Far from *forbidding* compliance with state or local law, CoreCivic's contract with ICE expressly requires it. Petta Decl., Ex. G at 3-4, 55-56. The contract furthermore requires compliance with more stringent state and local laws even where they may conflict with federal policies. *See id.* at 3 ("where there is a conflict in requirements, the most stringent standard shall apply"). And prior intergovernmental agreement for operation of the Facility likewise required "compl[iance] with . . . all local laws and regulations," and provided that "[s]hould a conflict exist between any of the aforementioned standards, the most stringent shall apply." Planner Decl., Ex. B at 4; *see also Nwauzor*, 127 F.4th at 770-71 (quoting ICE contract requiring compliance "with 'all applicable federal, state, and local laws and standards'" and to adhere to "'the most stringent standard'" if a conflict exists); *Inslee*, 151 F.4th at 1117 (same); *supra*, section I.A. CoreCivic is plainly not entitled to derivative sovereign immunity. *See Nwauzor*, 127 F.4th at 770-71 (no derivative sovereign immunity where "there [wa]s nothing in the contract that would forbid [compliance with state labor laws]"). It cannot hide behind the federal government for its own decisions to ignore local and state law.

### 3. The intergovernmental immunity doctrine does not absolve federal contractors from complying with the Municipal Code and state law.

CoreCivic also relied on the intergovernmental immunity doctrine to support removal. Notice ¶¶ 61-69. A state law violates the doctrine of intergovernmental immunity only when it

24

"directly regulate[s]" the federal government or "discriminate[s] against it." *Nwauzor*, 127 F.4th at 759-60 (quoting *United States v. Washington*, 596 U.S. 832, 835 (2022) ("*Washington*")). Although the Supremacy Clause immunizes the federal government from direct regulation, "[t]he scope of a federal contractor's protection from state law under the Supremacy Clause is substantially narrower." *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 755 (9th Cir. 2022) ("*Newsom*"); *Inslee*, 151 F.4th at 1116 (local governments "ha[ve] greater ability to regulate a contractor of the federal government than to regulate the government itself"). None of the laws invoked here directly regulate the federal government. They do not "defeat the legitimate operations" of the federal government (*see M'Culloch v. State*, 17 U.S. 316, 427 (1819)) because they still permit the federal government to carry out its immigration policy, namely by operating and detaining people at the Facility through its federal contractors. Nor do the laws discriminate against federal private contractors by disfavoring them over other similarly situated entities. The Municipal Code and UCL merely impose the same procedural requirements on CoreCivic as any other entity seeking to operate a business within the City.

*First*, none of the laws at issue directly regulate the federal government by merely imposing procedural requirements on CoreCivic. Regulations do not violate the Constitution where they "merely increase[s] the federal government's costs." *Newsom*, 50 F.4th at 755; *Washington*, 596 U.S. at 839; *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 323 (3d Cir. 2025) ("*New Jersey*") (the intergovernmental immunity doctrine does not prohibit states from enacting laws that "merely impose an incidental economic burden on the federal government"). For example, in *Inslee*, the Ninth Circuit upheld a Washington law that imposed health and safety requirements on detention centers, holding that the law did not violate the intergovernmental immunity doctrine. 151 F.4th at 1117-18. Even though the law may have increased costs for the private contractor operating the detention center, it did not require "ICE to entirely transform its approach to detention in the state or else abandon its []facilities," give the state "virtual power of review over ICE's detention decisions," or "prevent ICE's contractors from continuing to run detention facilities." *Id.* at 1118 (quoting *Newsom*, 50 F.4th at 750-51).

25

By contrast, courts have previously struck down state laws that expressly ban detention centers. In *New Jersey*, the state passed a law "ban[ning] the state, its local governments, and private parties from making, renewing, or extending any contract to detain people for civil immigration violations." 145 F.4th at 320. And in *Newsom*, California passed a law prohibiting the operation of private detention facilities within the state. 50 F.4th at 752. The respective courts in each case found that these laws were unlawful attempts to directly regulate the federal government because they outright prevented the federal government from "choosing how and through whom it will carry out a core federal function" by eliminating detention centers in New Jersey and California. *New Jersey*, 145 F.4th at 325-27; *Newsom*, 50 F.4th at 755-58.

Here, the underlying local and state laws merely require that CoreCivic comply with certain procedural prerequisites in order to operate the Facility. The Municipal Code requires that CoreCivic obtain the proper business license and conditional use permit prior to opening. *See* California City Mun. Code § 3-2.3.201 ("It shall be unlawful for a person to commence, maintain, conduct, or carry-on a business within the City without having first obtained a [business] license."); *id.* § 9-2.402 ("[t]he following uses may be permitted in the RA district with a conditional use permit"). Section 1670.9(d) of SB 29 requires only that *local governments*, prior to issuing any such permit, provide advance public notice and opportunities for public comment. Cal. Civ. Code § 1670.9(d). None of these laws purport to directly regulate the federal government or federal private contractors as such.[3] And, once again, the federal government has expressly required compliance with state and local laws (Petta Decl., Ex. G at 3-4), undermining CoreCivic's assertion that those same laws are somehow interfering with federal government functions.

---

[3] Courts have routinely held that state laws regulating local governments do not directly regulate the federal government or federal contractors, even where the law expressly involves federal immigration activities. *See Raoul*, 44 F.4th at 593 & n.6 (holding Illinois law that bans local governments from entering into immigrant detention agreements "imposes no direct regulation on any federal official or agency"); *see also California*, 921 F.3d at 880-81 (holding California law that requires employers to notify employees before federal enforcement inspections does "not violate the doctrine of intergovernmental immunity," because it "is directed at the conduct of *employers*, not the United States or its agents").

26

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

Unlike the laws in *New Jersey* and *Newsom*, neither the Municipal Code nor Section 1670.9(d) prohibits CoreCivic from operating the Facility or detaining people at the Facility. *See New Jersey*, 145 F.4th at 325-27; *Newsom*, 50 F.4th at 755-58. Rather, they merely require that CoreCivic obtain the necessary paperwork in order to operate its business at the Facility and that the public is provided opportunities to comment on the Facility's opening before it occurs. Though compliance with these requirements may increase CoreCivic's costs, like the law in *Inslee*, they do not violate intergovernmental immunity because they do not prevent CoreCivic from operating the Facility or otherwise dictate how those facilities may be operated. *See Inslee*, 151 F.4th at 1117-18.[4]

*Second*, the state and local laws do not unlawfully discriminate against the federal government. A law discriminates against the federal government only if it treats federal actors differently from other similarly situated entities absent "significant differences" between the two kinds of actors. *See Dawson v. Staeger*, 586 U.S. 171, 177 (2019); *Washington*, 596 U.S. at 839. Here, the relevant Municipal Code sections, UCL provisions, and Section 1670.9(d) do not violate the intergovernmental immunity doctrine because they apply equally to all regulated parties; they treat federal private contractors no differently from similarly situated state or local contractors.

For example, in *Inslee*, the Ninth Circuit held that Washington health and safety provisions applicable to detention centers must be analyzed by comparison to similar standards applicable other involuntary residential facilities, and that plaintiff must show it was treated less favorably than those facilities. 151 F.4th at 1120-22. In *Nwauzor*, the Ninth Circuit found that Washington's Minimum Wage Act, as applied to an immigration detention facility run by a federal contractor, did not discriminate against the federal government. *See* 127 F.4th at 763-67. The court asked "whether the [Act] treats private facilities operated under contract with the federal government differently from private facilities operated under contract with the state government." *Id.* at 763. It answered, "no." The Act did not differentiate between private facilities based on whether they

---

[4] In fact, as discussed above, CoreCivic's federal contract requires it to comply with these requirements. *See supra*, Sections I.A, I.C.2.

27

contracted with the state or federal government and therefore did not unconstitutionally discriminate against the federal government. *Id.* at 763-64.

Likewise, here, the Municipal Code and UCL do not discriminate against the federal government because they do not distinguish between federal contractors and state contractors. The permitting requirements apply to any person or entity seeking to engage in a conditional use within a Rural Agricultural district and the licensing requirements apply to any person or entity seeking to operate a business within the City. *See* California City Mun. Code §§ 3-2.3.201; 9-2.402. And the UCL applies to any "person" or "corporation" operating within the state, encompassing both federal and state contractors. Cal. Bus. & Prof. Code §§ 17201 (defining "person"), 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). The Notice also fails to provide any explanation of how either the Municipal Code or the UCL discriminate against CoreCivic or the federal government. *See* Notice ¶¶ 65, 69.

Nor does Section 1670.9(d) discriminate against federal contractors as compared to non-federal counterparts. The provision also requires that state and local governments provide notice and opportunities for comment prior to issuing permits to "*any* private corporation, contractor, or vendor to house or detain noncitizens for purposes of civil immigration proceedings." Cal. Civ. Code § 1670.9(d) (emphasis added). Thus, by its clear terms, the provision is non-discriminatory because it applies regardless of whether the entity operating the detention facility is a state or federal contractor. Moreover, CoreCivic fails to identify any similarly situated parties that are treated more favorably. *See* Notice ¶¶ 68-69. *See Raoul*, 44 F.4th at 594 (no intergovernmental immunity where the law was facially neutral and defendant failed to identify any entities treated more favorably); *Washington*, 596 U.S. at 833 ("A state law discriminates against the Federal Government or its contractors if it singles them out for *less favorable* treatment.") (internal quotation marks omitted; emphasis added).

Because the local and state laws neither directly regulate nor discriminate against the federal government or CoreCivic, they do not violate the intergovernmental immunity doctrine.

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

## II. Petitioners Are Entitled to Their Reasonable Costs and Attorneys' Fees Incurred as a Result of Removal.

When granting a motion to remand, the district court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The process of removing a case to a federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Thus, a court need not find that removal was frivolous to award fees under this provision. *Id.* at 139-41. Instead, courts may award attorneys' fees when "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. In determining whether the defendant had an objectively reasonable basis for seeking removal, courts in the Ninth Circuit consider the "clarity of the law at the time of removal." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008).

As discussed above, CoreCivic did not have a reasonable basis for removal because it was not acting under federal authority when carrying out its admitted violations of local law and because this lawsuit does not relate to any contractual obligations it has with the federal government. *See supra*, Sections I.A, I.B. Indeed, CoreCivic fails to even assert that it was acting under federal direction when it decided to forgo compliance with local and state law. *See id.* And the underlying contract, which CoreCivic withheld from Petitioners, prohibits the violations carried out by CoreCivic here. *See id*. These omissions are particularly glaring and inexcusable given that CoreCivic would have had access to any evidence necessary to support its removal request yet did not introduce evidence establishing that it was acting under federal authority or that this lawsuit relates to its ICE contract. Nor did the Notice explain how CoreCivic's asserted federal defenses could apply to Petitioners' non-SB 29 claims. Indeed, as discussed above, the federal defenses mentioned in the Notice are not colorable as applied to Petitioners' claims against CoreCivic. *See supra*, Section I.C.

Furthermore, CoreCivic's subsequent actions suggest that removal served only to delay and increase the expense of litigation. For several months, it refused to respond to Petitioners' request for the underlying contract referenced in its Notice. Petta Decl. ¶¶ 3-8, 12. And, in fact,

29

the Contract contradicts the assertions made in CoreCivic's Notice. *See id.*, Ex. G at 3-4. CoreCivic has also made clear that it never intended to litigate its federal defenses in federal court. Though its Notice asserted that CoreCivic's responsive pleading would raise colorable federal defenses (Notice ¶ 57), CoreCivic instead subsequently moved to dismiss this entire action only for lack of subject matter jurisdiction (Dkt. 50 (CoreCivic's Motion to Dismiss) at 1-2). If successful, CoreCivic's motion would effectively remand the entire action back to state court, entirely undermining CoreCivic's own earlier removal and the purposes of federal officer removal. *See* 28 U.S.C. § 1447(c) (if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). That CoreCivic is now acting to remand the case back to state court suggests that it lacked a reasonable basis for removing this action to federal court in the first instance. An award of costs and attorneys' fees is therefore appropriate to compensate Petitioners for the additional expenses in preparing this motion and subsequently responding to CoreCivic's unnecessary motion to dismiss.

To date, Petitioners have incurred $309,886.57 in reasonable attorneys' fees and costs as a result of the removal. Petta Decl. ¶¶ 34-35, Exs. H, L; Declaration of Grisel Ruiz (filed concurrently) ("Ruiz Decl.") ¶ 11, Ex. A; Declaration of Callard Cowdery (filed concurrently) ("Cowdery Decl.") ¶ 10, Ex. A. This includes counsels' briefing and research in opposing CoreCivic's Motion to Dismiss and preparing the instant Motion. Petta Decl. ¶¶ 22-25, Ex. H; Ruiz Decl. ¶ 12, Ex. A; Cowdery Decl. ¶ 11, Ex. A. The court's determination of the reasonableness of requested fees is guided by the lodestar method: multiplying the number of hours reasonably worked by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *Green v. Baca*, 225 F.R.D. 612, 615-16 (C.D. Cal. 2005) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)). There is "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (internal quotations marks omitted). "The prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan*, 815 F.2d at 1262.

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB

The accompanying declaration documents the hours Petitioners' counsel have spent on briefing CoreCivic's Motion to Dismiss and this Motion, both of which were made necessary by CoreCivic's removal. As of June 15, 2026, this totals 560.2 hours, including 119 hours of partner time, 414.2 hours of associate time, and 21 hours of paralegal time by SMW (Petta Decl. ¶ 34); 3 hours of time by Immigrant Legal Resource Center (Ruiz Decl. ¶ 11); and 3 hours of time by African Advocacy Network (Cowdery Decl. ¶ 10). Petitioners made best efforts to litigate this case efficiently and minimize duplicative work. *See* Petta Decl. ¶¶ 24, 26; Ruiz Decl. ¶ 12; Cowdery Decl. ¶ 11. For example, counsel made a substantial effort to delegate work to personnel with lower billing rates where possible. Petta Decl. ¶ 24. Petitioners have also excluded time spent by law clerks or by attorneys who did not have substantial engagement with the matter, potentially duplicative time entries, and all time spent litigating Petitioners' request for a temporary restraining order in federal court. These exclusions amount to a roughly 40% reduction of Petitioners' fees. Petta Decl. ¶ 26.

As described in the accompanying declaration, Petitioners are seeking the following rates:

| Name (Position) | Rate |
|---|---|
| Joseph D. Petta (Partner) – SMW | $800/hour |
| Mindy K. Jian and Ryan K. Gallagher (Associates) – SMW | $575/hour |
| Emma Lewis (Junior Associate) – SMW | $400/hour |
| Maurene E. Ryan and Julie R. Dolinsek (Paralegals) – SMW | $250/hour |
| Grisel Ruiz (Senior Managing Attorney) – ILRC | $800/hour |
| Jehan M. Laner (Managing Attorney) – ILRC | $650/hour |
| Callard Cowdery (Supervising Attorney) – AAN | $575/hour |

A reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation," which can be proven by attorney affidavit. *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). The rates sought by Petitioners are consistent with or, in some cases, below the range of rates typically awarded to San Francisco Bay Area law firms. *See* Petta Decl. ¶¶ 28-33; Ruiz Decl. ¶¶ 9-10 ; *see also Solutions 30 E. Eur., S.R.L. v. Muddy Waters Cap. LLC*, No. 4:21-CV-02423-YGR, 2022 WL 1814439, at *2 (N.D. Cal. Apr. 28, 2022) (Finding that a rate of $725 per hour for a partner with over 15 years of experience was "at or below the median ranges for lawyers of comparable

experience in the Bay Area"); *Polee v. Central Contra Costa Transit Authority*, 516 F. Supp. 3d 993, 997-98 (N.D. Cal. 2021) (awarding an $850 hourly rate for at attorney with decades of experience and specialized practice); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 450, 455 (9th Cir. 2010) (upholding a 2008 fee award of $740 per hours for senior partners).

Petitioners' reply brief will update the expenses and attorneys' fees incurred to that point and provide the total amount of requested fees and expenses.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court grant this Motion, remand this action to state court, and award Petitioners their reasonable attorneys' fees in bringing this Motion.

DATED:  June 18, 2026                                SHUTE, MIHALY & WEINBERGER LLP


                                                      By:      /s/ Joseph D. Petta
                                                      JOSEPH D. PETTA
                                                      MINDY K. JIAN
                                                      RYAN K. GALLAGHER

                                                      Attorneys for Dignity Not Detention Coalition


2082557.1

PETITIONERS' NOTICE OF MOTION AND MOTION TO REMAND AND FOR ATTORNEYS' FEES; MPA
Case No. 1:25-cv-01292-JLT-CDB