Daniel P. Struck, Pro Hac Vice
AZ Bar #012377
Dana M. Keene, CA Bar #324993
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Tel.: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
dkeene@strucklove.com

Nicholas H. Rasmussen, Bar #285736
McCORMICK BARSTOW, LLP
7647 North Fresno Street
Fresno, CA 93720
Tel: (559) 433-1300
Fax: (559) 433-2300
nrasmussen@mccormickbarstow.com

Attorneys for Defendant CoreCivic, Inc.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIGNITY NOT DETENTION COALITION AND JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CALIFORNIA CITY; CORECIVIC, INC.,<br><br>Defendants. | Case No. 1:25-cv-01292-JLT-CDB<br><br>**CORECIVIC'S MOTION TO DISMISS RE: MOOTNESS**<br><br>Date: December 16, 2026<br>Time: 9:00 AM<br>Judge: Hon Jennifer L. Thurston<br>Crtrm: 4<br><br>U.S. District Judge: Hon. Jennifer L. Thurston<br>U.S. Magistrate Judge: Hon. Christopher D. Baker<br><br>Trial Date: None |

**NOTICE OF MOTION AND MOTION TO DISMISS**

NOTICE IS HEREBY GIVEN THAT at 9:00 AM on December 15, 2026, or as soon thereafter as the matter may be heard before the Honorable Jennifer L. Thurston of the United States District Court for the Eastern District of California, Fresno Division, Courtroom 4, on the 7th floor of the United States Courthouse at 2500 Tulare Street, Fresno, California 93721, Defendant CoreCivic, Inc. moves this court for an order dismissing as moot Plaintiffs' Third, Fourth, and Fifth Causes of Action relating to Defendants' alleged failures to comply with SB 29 and/or the alleged

unlawful operation of the Facility without an approved business license. (Dkt. 1-3, ¶¶ 57–77.) Plaintiffs' requests for writs of mandate and orders enjoining CoreCivic's operation of the Facility until the City and CoreCivic comply with SB 29's procedures in issuing/obtaining a business license are also moot. Moreover, Plaintiffs' First, Second, Third, Fourth, and Fifth Causes of Action, to the extent they seek to shut down the Facility until CoreCivic obtains a new conditional use permit ("CUP") to use the Facility for immigration detention, are moot by virtue of the sale of the facility, including the real property, land, and all improvements thereon, to the United States. This Motion is brought pursuant to Fed. R. Civ. P. 12(b)(1).

Pursuant to the Court's Order (Dkt. 58) directing the parties "to inform the Court of any changed circumstances that have rendered all or part of any pending motion moot," CoreCivic informed the Court that the City of California ("the City") has approved CoreCivic's site plan review ("SPR") minor and issued it a business license to operate the California City Correctional Facility ("Facility") as an immigration detention center, and denied Plaintiff Dignity Not Detention ("DND") Coalition's administrative appeals of those decisions. (Dkt. 68, ¶¶ 1–5; Dkt. 69, ¶¶ 1–2; Dkt. 72, ¶¶ 1–2.) CoreCivic further informed the Court that the United States Department of Homeland Security ("DHS") purchased the Facility on July 2, 2026. (Dkt. 68, ¶1; Dkt. 69, ¶ 6; Dkt. 68, ¶ 2; Dkt. 72, ¶ 3.) If the Court finds that Plaintiffs' claims are moot by these changed circumstances, it is unnecessary for it to address arguments in CoreCivic's pending Motion to Dismiss (Dkt. 50) that Plaintiffs lack standing to bring them.

Pursuant to the Court's standing order, CoreCivic has attempted to meet and confer with Plaintiffs regarding the arguments in this Motion prior to filing it. Specifically, on October 20, 2026, undersigned counsel emailed Plaintiffs' counsel, explained the bases for the Motion, and sought Plaintiffs' position. (Ex. 1: Struck Decl., ¶ 4.) On October 22, 2026, Joseph Petta responded and stated that he would confer with his clients and co-counsel and provide their position "next week." (*Id.*, ¶ 5.) On October 28, 2026, undersigned counsel followed up with Mr. Petta, again seeking his position, and Mr. Petta responded that he needed more time to discuss the issue with his clients and co-counsel and would get back to CoreCivic's counsel "in the latter half of next week." (*Id.*, ¶ 6.) On November 6, 2026, undersigned counsel again followed up with Mr. Petta and

requested Plaintiffs' position on the Motion by noon on November 9, 2026, noting that CoreCivic was concerned with complying with the Court's Order (Dkt. 58) directing the parties to address any potential mootness issues. (*Id.*, ¶ 7.) That same day, Mr. Petta requested a meet and confer the following Friday. (*Id.*, ¶ 8.) On November 9, 2026, undersigned counsel contacted Mr. Petta to advise that CoreCivic was willing to meet and confer with Plaintiffs on November 13, 2026 but would file the Motion in the interim to avoid non-compliance with the Court's Order and would withdraw the Motion if during the meet and confer, the parties were able to resolve the issues presented. (*Id.*, ¶ 9.)

CoreCivic's Motion is based on the following Memorandum of Points and Authorities and the argument of counsel at the time of hearing or otherwise.

DATED this 11th day of November 2026.

STRUCK LOVE ACEDO, PLC

By /s/ Daniel P. Struck
Daniel P. Struck
Dana M. Keene

Nicholas H. Rasmussen
MCCORMICK BARSTOW, LLP

Attorneys for Defendant CoreCivic, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Relevant Background.

#### A. Plaintiffs' Claims.

In 2025, CoreCivic entered into a contract with U.S. Immigration and Customs Enforcement ("ICE") for the detention of immigration detainees who are awaiting a removal proceeding. (Dkt. 1-3, ¶¶ 40–41, 43.)

On September 16, 2025, Plaintiffs DND Coalition and John Doe filed their Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief and Damages, alleging that CoreCivic's ownership and operation of the Facility, and the City's approval of its operation without complying with SB 29, violate state and local zoning laws and business licensing regulations." (*Id.*, ¶¶ 1–5, 26–30, 36.)

Plaintiffs bring five causes of action and seek only declaratory and injunctive relief :

- **First Cause of Action**: The City's approval of CoreCivic's operation of the Facility without a conditional use permit violates state and local zoning ordinances (Dkt. 1-3, ¶¶ 39–51);
- **Second Cause of Action**: The City violated its regulatory duty by not initiating an enforcement action to enjoin CoreCivic's operation of the Facility (*id.*, ¶¶ 52–56);
- **Third Cause of Action**: The City's permission for CoreCivic to operate the Facility without a conditional use permit and a business license violates California Civil Code section 1670.9(b) ("SB 29") (*id.*, ¶¶ 57–63);
- **Fourth Cause of Action**: CoreCivic's operation of the Facility without a conditional use permit and a business license violates local zoning ordinances (*id.*, ¶¶ 64–70); and
- **Fifth Cause of Action**: CoreCivic's operation of the Facility without complying with SB 29 and local zoning ordinances to obtain a conditional use permit and a business license violates California's Unfair Competition Law, Bus. & Prof. Code § 17200 (*id.*, ¶¶ 71–77).

Plaintiffs claim that the "City must be required to comply with and enforce its Zoning Regulations" and " enjoined from issuing further approvals for the Project unless it complies with SB 29"; and "CoreCivic must be enjoined from further operating and further populating the Facility until it receives the proper approvals and the City complies with SB 29." (*Id.*, ¶ 6.) As a remedy, Plaintiffs seek a "declaration that the City violated its duties under SB 29 and its Municipal Code" (Dkt. 1-3 at 19) and an order "directing the City to comply with SB 29 and the City's Municipal Code"; enjoining "any actions to implement the [immigration detention facility], unless and until the City and CoreCivic fully comply with SB 29 and the requirements of the City Municipal Code"; and "enjoining CoreCivic from violating the City's Municipal Code and [SB 29]." (*Id.* at 18–19.)

**B. CoreCivic's Pending Motion to Dismiss.**

Pending before the Court is CoreCivic's Motion to Dismiss (Dkt. 50), which seeks dismissal of all five of DND Coalition's causes of action for lack of Article III standing (*id.*, § II.A–C, at 5–12), and the First, Second, Fourth, and Fifth Causes of Action because both DND Coalition and John Doe lack standing under California law (*id.*, § III.A–C). CoreCivic did not move to dismiss John Doe's Third Cause of Action. (Dkt. 50 at 2, 15; Dkt. 59 at 2 ["CoreCivic concedes that John Doe has standing to pursue his Third Cause of Action …."].)[1]

**C. CoreCivic's Business License.**

On July 22, 2025, CoreCivic applied to the City for approval of an SPR Minor and issuance of a business license to operate the Facility as an immigration detention center. (Dkt. 18-1 (Arriola Decl.) at ¶¶ 39–40; Ex. 2, Malloy 2d Decl., ¶ 5.) The City provided its first public notice that it was considering the application on the City Planning Commission's August 5, 2025 Meeting Agenda and Monthly Report. (Dkt. 18-2 (Giardina Decl.) at ¶ 29 & Attachment P thereto, at ECF page 340.) CoreCivic supplemented its application on August 11, 2025, with a business plan for the operation of the Facility. (Ex. 2, ¶ 6.) The City provided public notice that it was considering CoreCivic's application no later than August 12, 2025. (Dkt. 18-2 at ¶ 41, & Attachment Y at ECF pages 386, 389–390.) In response to interest by the United States Marshals Service to also place

[1] Plaintiffs' Motion to Remand has been briefed and is also pending resolution. (Dkts. 63, 70, 73.)

detainees at the facility, CoreCivic submitted a second SPR Minor and business license application on August 25, 2025. (Ex. 2, ¶ 7.) That application was clarified on September 15, 2025. (*Id.*, ¶ 8.)

The City held the first noticed public hearing on both of CoreCivic's applications before the City Council on October 28, 2025. (*Id.* ¶ 9; Ex. 3, Giardina 2d Decl., ¶¶ 3–6.) It also provided advance notice, which was reported in local media, and held a second public hearing on CoreCivic's applications before the Planning Commission on December 16, 2025. (Ex. 2, ¶ 10; Ex. 3, ¶¶ 7–9.) On February 26, 2026, after holding two noticed public hearings under the procedures set forth in SB 29, the City Planner approved CoreCivic's SPR Minor 25-09, and the City Clerk issued it a business license. (Ex. 2, ¶¶ 9–11.)

### D. Plaintiff's Administrative Appeals and the Federal Government's Purchase of the Facility.

On February 27, 2026, Plaintiff DND Coalition submitted an administrative appeal, asking the City to revoke the City Planner's approval of SPR Minor 25-09 and the City Clerk's issuance of the business license based on the same allegations in this case. (Dkt. 68, ¶ 2; Ex. 2, ¶ 12 & Attachment E.) The appeal resulted in two administrative proceedings under the Municipal Code. (Dkt. 68, ¶ 2.)

On July 2, 2026, the United States Department of Homeland Security ("DHS") purchased the Facility. (Dkt. 68, ¶1; Dkt. 69, ¶ 6; Dkt. 68, ¶ 2; Dkt. 72, ¶ 3; Ex. 3, ¶ 10 & Attachment E.)

On July 7, 2026, the City Planning Commission heard the appeal of the SPR Minor 25-09. (Dkt. 68, ¶ 3; Ex. 3, ¶¶ 12–15 & Attachments G, H, I.) It adopted Resolution No. PC 2026-07-07 denying the appeal and upheld the City Planner's February 26, 2026 approval of SPR 25-09 as issued. (*Id.*) Also on July 7, 2026, the City Manager heard the appeal of the business license. (Dkt 68, ¶ 4; Ex. 3, Attachment J at 2.) On July 9, 2026, the City Manager issued a written decision denying that appeal and upheld the City Clerk's issuance of the business license as well. (Ex. 3, ¶ 16 & Attachment J.)

On July 9, 2026, DND Coalition appealed to the City Council to review the Planning Commission's decision upholding the City Planner's approval of SPR Minor 25-09. (Dkt. 69, ¶ 1; Ex. 3, ¶ 17 & Attachment K.) On July 10, 2026, DND Coalition then appealed to the City Council

to review the City Manager's decision upholding the City Clerk's issuance of the business license. (Dkt 69, ¶ 2; Ex. 3, ¶ 18 & Attachment L.)

On August 25, 2026, the City Council heard both appeals at a public hearing and denied them, completing the administrative appeals process. (Dkt. 72, ¶¶ 1–2; Ex. 3, ¶¶ 19–20 & Attachments M, N.)

## II. Changed Circumstances Have Mooted Plaintiffs' Claims.

### A. Legal Standard.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* In doing so, the doctrine "serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role[.]" *Id.* (internal quotation and citations omitted).

"A corollary to this case-or-controversy requirement is that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citation omitted). "Like standing, the case or controversy requirement of Article III, § 2 also underpins the mootness doctrine." *ACLU of Nev. v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006). "Whereas standing is evaluated by the facts that existed when the complaint was filed, '[m]ootness inquiries … require courts to look to changing circumstances that arise after the complaint is filed.'" *Id.* (citation omitted). *Id.* "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Symczk,* 569 U.S. at 71 (citation omitted). "The 'personal stake' aspect of [the] mootness doctrine also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted).

"Where the activities sought to be enjoined already have occurred, and … courts cannot undo what has already been done, the action is moot, and must be dismissed." *Bernhardt v. Conty of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002).

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To determine a Rule 12(b)(1) motion to dismiss for factual mootness, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *Id.*

**B. Plaintiffs' Claims Based on the Alleged Failure to Comply with SB 29's Procedures and Issue or Obtain a Business License Are Moot.**

Plaintiffs' **Third Cause of Action** alleges that the City cannot lawfully issue a business license or any other permit for CoreCivic for that operation until it has complied with SB 29's public notice and hearing requirements. (*See* Dkt. 1-3, ¶ 61 ["The City has not met either of the requirements of section 1607.9(d). … The City cannot lawfully issue the required business license or [Conditional Use Permit ("CUP")], or any other entitlement unless and until it provides public notice and holds a hearing."], ¶ 63 ["By permitting CoreCivic to operate the Facility without a properly noticed, agendized, and publicly discussed business license or CUP, the City violated Civil Code section 1670.9(d)."].).

As an initial matter, SB 29 does not apply to either the City Planner's approval of SPR 25-09 or the City Clerk's issuance of CoreCivic's business license. Under California law, the City has authority to "license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the city." *See* Cal. Gov't Code § 37101(a) (providing certain exceptions not relevant here). Nothing in SB 29 impairs, much less places a procedural restriction on, the City's exercise of that authority in issuing CoreCivic a business license. Indeed, SB 29 does not mention a business license. By its plain and unambiguous terms, SB 29 applies only where the City proposes to: (1) "approve or sign a deed, instrument, or other document related to a conveyance of land;" or (2) "issue a permit for the building or reuse of existing buildings" on or after January 1, 2018. *See*

Cal. Civ. Code § 1670.9(d). SB 29 itself expressly limits the meaning of "permit" to one that is "for the use or reuse of a building." *Id.* (emphasis added). Both SB 29's notice and hearing provisions reinforce that meaning by referring to "the proposed … permitting action" and "the proposed … permit action." *Id.* The plain text of the statute thus leaves no doubt that the term "permit" means a permitting action for the use or reuse of a building, not an application for a business license. *See Geo-Energy Partners-1983 Ltd. v. Salazar*, 613 F.3d 946, 956 (9th Cir. 2010) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."). Indeed, DND Coalition advocated for the passage of SB 29, and its members include the Freedom for Immigrants ("FFI") and the Immigration Legal Resource Center ("ILRC"), two organizations that cosponsored SB 29. (Dkt. 1-3, ¶ 7; *see* Dkt. 18-2, ¶ 50 and Attachment GG at ECF Paage 455.) They admit in their published guide to SB 29 that the statute applies only when "a privately-run immigration detention is trying to expand, buy, or lease property," and the City issues a permit for the expansion or sells/lease property to an immigration detention facility. (Dkt. 18-2, ¶ 50 and Attachment GG at ECF 456, 459–60.) CoreCivic did not try to expand, buy, or lease property. Nor did the City issue a permit for any such transaction.

Nonetheless, because DND Coalition publicly protested and then filed this lawsuit, the City did not immediately issue CoreCivic a business license to which it was entitled under state and local laws. In an abundance of caution, the City instead followed SB 29's procedures by providing at least 180 days' public notice and holding at least two public hearings before issuing CoreCivic the business license. (Ex. 2, ¶¶ 9–10; Ex. 2, ¶¶ 4–9.) *See, e.g.*, *Immigr. Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751 (9th Cir. 2020) (holding city complied with SB 29 by issuing CUP modifications 180 days after it gave the first public notice and held at least two open hearings, after explaining that a city may comply with the two-hearing requirement by hearings before the city council and/or its subsidiary departments). Accordingly, the **Third Cause of Action** is moot. *Chen*, 819 F.3d at 1144; *see also, e.g.*, *Geo Grp., Inc. v. Newson*, No. 2:20-CV-00533-TLN-AC, 2022 WL 296046, at *3 (E.D. Cal. Feb. 1, 2022) (finding the city's approval of CUP modifications mooted facility's claim that SB 29 was unconstitutional).

In their **Fourth Cause of Action**, Plaintiffs similarly allege that CoreCivic violated the City Municipal Code by operating the Facility as an immigration detention center without obtaining a CUP, a business license, or any permit allowing its use for that purpose under the City's current zoning regulations.[2] (*See* Dkt. 1, ¶ 65 ["The City's Municipal Code provides that '[i]t shall be unlawful for a person to commence, maintain, conduct, or carry-on a business within the City without having first obtained a [business] license.'" (alterations in original)]; *id.*, ¶ 66 ["Even if the use of the Facility for immigration detention were allowed as a conditional use, CoreCivic has not obtained a CUP, a business license, or any permit allowing its use of the Facility under the Zoning Code."]."). And in their **Fifth Cause of Action**, Plaintiffs allege a derivative claim that CoreCivic has engaged in an unfair business practice under California Business and Professions Code section 17203 by operating the Facility as an immigration detention center without obtaining a business license or other permit, in violation of the Municipal Code and SB 29. (Dkt. 1-3, ¶¶ 72–77.) Because CoreCivic has obtained a business license that authorizes it to operate the Facility as an immigration detention center under the existing CUPs and Municipal Code, and after the City followed SB 29's public notice and hearing procedures, the Fourth and Fifth Causes of Action are also moot. *Chen*, 819 F.3d at 1144; *see also Geo Grp.*, 2022 WL 296046, at *3; *cf. JSLG, Inc. v. City of Waco*, 504 F. App'x 312, 315 (5th Cir. 2012) (finding claim against city seeking to enjoin revocation of business license was moot after expiration of the revocation period).

### C. Plaintiffs' Related Requests for Declaratory and Injunctive Relief Are Moot.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "In other words, the 'threatened injury must be certainly impending to constitute injury in fact' and

---

[2] During the review of CoreCivic's Applications, the City determined that the operation of the facility was within the scope of CUPs 97-01 and 98-02, and no further modification of either was required for current operation of the facility. (Dkt. 17-1 (Doravari Dec.) at ¶¶ 5–9.) The City Planning Commission and the City Council upheld that determination in denying DND Coalition's administrative appeals of the approval of SPR Minor 25-09. (*See supra* § I.D.)

'allegations of possible future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified)).

Plaintiffs' requests for declaratory and injunctive relief include: (1) "writs of mandate directing the City to comply with SB 29 and the City's Municipal Code;" (2) "a temporary stay, temporary restraining order, and preliminary and permanent injunctions restraining the City and CoreCivic … from taking any actions … unless and until [they] fully comply with SB 29 and the requirements of the City's Municipal Code"; (3) "[a] Court order pursuant to Business and Professions Code section 17203 enjoining CoreCivic from violating the City's Municipal Code and Civil Code section 1670.9"; and "[a] declaration that the City violated its duties under SB 29 and its Municipal Code." (Dkt. 1-3 at 17–18.)

Because these declaratory and injunctive relief claims are based on CoreCivic's alleged operation of the Facility as an immigration detention center without obtaining a business license pursuant to SB 29's public notice and hearing procedures, these claims are also moot.

### D. The Federal Government's Purchase of the Facility Moots Plaintiffs' Claims Based on the Alleged Failure to Obtain a Conditional Use Permit.

In the **First, Second, and Third Causes of Action**, Plaintiffs allege that the City unlawfully approved CoreCivic's use of the Facility for immigration detention without requiring it to obtain a CUP to use the Facility for immigration detention. (Dkt. 1-3, ¶¶ 39–63.) In the **Fourth and Fifth Causes of Action**, Plaintiffs similarly allege that CoreCivic's immigration detention use of the Facility without obtaining a CUP violates SB 29 and local zoning ordinances. (*Id.*, ¶¶ 64–77.)

The Federal Government's July 2, 2026 purchase of the Facility moots these claims since CoreCivic no longer owns the Facility. This changed circumstance moots Plaintiffs' claims to the extent Plaintiffs seek compliance with SB 29, because that statute applies only to "a permit for the building or reuse of an existing building **by any private corporation, corporation, or vendor**." Cal. Civ. Code § 1670.9(d) (emphasis added). And because it is not the property owner, CoreCivic cannot apply for a new CUP, and the City cannot require CoreCivic to obtain one. Plaintiffs' request for a declaration that CoreCivic's use of the Facility without obtaining a new CUP and an order to shut down the Facility until CoreCivic obtains one is therefore a remedy that cannot be granted.

Plaintiffs' claims are also moot because the requested relief would violate the Supremacy Clause.[3] Under the intergovernmental immunity doctrine, a state or local government may not regulate the Federal Government or discriminate against it, directly or under the veneer of regulating CoreCivic. *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 754–58 (9th Cir. 2022); *accord CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 320, 325–326 (3d Cir. 2025). Thus, City and state permitting/zoning regulations may not be imposed in any manner that is discriminatory, controls, or overrides the Federal Government's decision to purchase and use the Facility for immigration detention.[4] *See Pub. Utils. Comm'n v. United States*, 355 U.S. 534, 542–44 (1958) (striking down a California regulation requiring state approval of reduced rates the federal government had negotiated for transport of its property); *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 188–190 (1956) (striking state licensing requirements that would give the state board a "virtual power of review" over the federal government's choice of contractor); *Newsom*, 50 F.4th at 757–58 ("If California had passed a licensing scheme requiring private detention operators in California to obtain a state license, there is no doubt that it would be struck down under *Leslie Miller*. … There is no important difference for Supremacy Clause purposes between a state 'requir[ing] a permit' and 'order[ing] compliance with state regulations.' In both settings the State is claiming the authority to dictate the manner in which federal function is carried out.") (alterations in original and internal citation omitted)); *see also, e.g., United States v. King County*, 122 F.4th 740, 756–57 (9th Cir. 2024) (invalidating executive order that directed county officials to ensure that future

---

[3] As discussed in detail in CoreCivic's Response to Plaintiffs' Motion to Remand, incorporated by reference here for brevity, the intergovernmental immunity and preemption doctrines of the Supremacy Clause prohibit subjecting the Facility to state and local permitting/zoning regulations, especially now that the Federal Government owns it. (Dkt. 70 at 19–27.)

[4] Although SB 29 does not apply to the Federal Government's use of the Facility, the statute also violates intergovernmental immunity by discriminating against federal contractors because it singles out those that "house or detain noncitizens for purposes of civil immigration proceedings" for less favorable treatment than similarly situated contractors that house state or local detainees. Cal. Civ. Code § 1670.9(d). There are no significant differences between private contractors who operate facilities housing ICE immigration detainees and private contractors who operate detention or reentry facilities that house state or local detainees or inmates to justify that discrimination.

leases prohibit servicing ICE charter flights at a county airfield); *cf. Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 438–41 (9th Cir. 1991) (holding California authorities were preempted from imposing fines on a private contractor for not obtaining a state license to perform work exclusively for the federal government).

Under the same principles and case law, City and state permitting/zoning regulations are preempted as obstacles to ICE's immigration detention operations, over which DHS has plenary authority to determine whether the Facility is appropriate for immigration detention use. *See Newsom*, 50 F.4th at 758; 8 U.S.C. § 1231(g)(1); 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4). Thus, Plaintiffs may not wield those regulations as a virtual veto over the Federal Government's decision to purchase and use the Facility for immigration detention under the existing CUPs. *See CoreCivic v. Murphy*, 690 F. Supp. 3d 467, 486–93 (2023)*, aff'd sub nom. Governor of New Jersey*, 145 F.4th at 325–28; *see also Newsom*, 50 F.4th at 762–63. Because Plaintiffs seek to enjoin the Facility, which is a vital hub and essential to ICE's immigration detention operations, the enforcement of the state and local permitting regulations prohibits ICE from performing its core function. *Newsom*, 50 F.4th at 758.

Moreover, the Supreme Court has held in *Hancock v. Train*, 426 U.S. 167, 173–80 (1976), that a state regulation is preempted where, as here, it directly regulates the federal government by requiring a "federally owned or operated" installation to apply for an operating permit. "*Hancock* thus establishes that a federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988). Accordingly, the City and state permitting regulations Plaintiffs invoke are preempted for the same reasons that their enforcement would violate intergovernmental immunity—they interfere with ICE's core immigration detention operations at a Facility it now owns. Because there is no clear congressional intent to the contrary, state and local zoning ordinances do not apply to federal installations. *See California Attorney General Opinion No. 85-102*, 68 Cal. Op. Att'y Gen. 310 (1985) ("The United States Postal Service need not comply with county zoning regulations in constructing a post office on land owned or leased by the United States.").

Because the declaratory and injunctive relief Plaintiffs seek cannot be granted, any adjudication of these claims would be merely advisory. The Federal Government's purchase and ownership of the Facility thus renders moot all of Plaintiffs' claims based on the alleged failures by the City to require, or CoreCivic to obtain, a new CUP to use the Facility for immigration detention. *See Church of Scientology of Calif.*, 506 U.S. at 12; *Bernhardt*, 279 F.3d at 871.

**III. A Finding of Mootness Moots the Need to Address Certain Arguments in CoreCivic's Pending Motion to Dismiss for Lack of Standing.**

The mootness of Plaintiffs' claims provides an additional ground for dismissal of the **Third, Fourth, and Fifth Causes of Action** under Rule 12(b)(1), as well as their claims for declaratory and injunctive relief relating to the alleged failures to comply with SB 29 and issue/obtain a CUP or a business license to operate the Facility as an immigration detention center. It also provides additional grounds for dismissal of the **First, Second, Third, Fourth, and Fifth Causes of Action** based on the alleged failures by the City to require, or CoreCivic to obtain, a new CUP to use the Facility for immigration detention.

A finding that these claims are moot due to the changed circumstances also obviates the need for the Court to address certain arguments in CoreCivic's pending Motion to Dismiss, including arguments that: (1) DND Coalition lacks Article III standing to bring the **First, Second, Third, Fourth, and Fifth Causes of Action** (Dkt. 50, § II.A–C at 5–13); and (2) both DND Coalition and John Doe lack standing to bring the **First, Second, Fourth, and Fifth Causes of Action** under California law (*id.*, § III.A–C at 13–15).

**IV. Conclusion.**

For the reasons above, (1) Plaintiffs' **Third, Fourth, and Fifth Causes of Action** are moot to the extent they are based on Defendants' alleged failures to comply with SB 29 in issuing/obtaining a business license to operate the Facility as an immigration detention center, and (2) Plaintiffs' **First, Second, Third, Fourth, and Fifth Causes of Action** are moot to the extent they seek to shut down the Facility until CoreCivic obtains a new CUP to use the Facility for immigration detention, because the sale of the Facility, including real property, land, and improvements thereon, to the United States means it is no longer subject to compliance with the

City's zoning regulations.

DATED this 11th day of November 2026.

STRUCK LOVE ACEDO, PLC

By /s/ Daniel P. Struck
Daniel P. Struck
Dana M. Keene

Nicholas H. Rasmussen
MCCORMICK BARSTOW, LLP

Attorneys for Defendant CoreCivic, Inc.